[No. 71618-8.   En Banc.]
Argued June 13, 2002.     Decided October 31, 2002.

TRACI HAUBER, *Individually, as Personal Representative, and as Guardian, Petitioner,* v. YAKIMA COUNTY, *Respondent.*

*Duncan C. Turner* and *Donald H. Mullins*, for petitioner.

*Alfred G. Schweppe* (of *Meyer, Fluegge & Tenney, P.S.*) and *James S. Berg* (of *James S. Berg, P.L.L.C.*), for respondent.

CHAMBERS, J. — A total of six underwater divers were involved in a tragedy; four died. Two divers employed by the Roza Irrigation District drowned while attempting to clear abandoned auto debris from a half-mile long underground siphon. Two rescue divers responded after the first two divers failed to surface. The two rescue divers also failed to

return to the surface, and two more divers recovered the rescue divers. We are asked to determine if Yakima County has statutory immunity against suits brought by emergency search and rescue (S&R) volunteers who are also professional fire fighters. We conclude that under the facts of this case, the county is entitled to immunity and affirm the trial court and the Court of Appeals.

## FACTS

Rusty Hauber, a city of Yakima fire fighter and registered emergency search and rescue dive team volunteer, was one of the rescue divers who died during the rescue mission in the Roza Canal. Hauber had been a Yakima city fire fighter since 1996 and a registered member of Yakima County S&R since 1992. Hauber died attempting to rescue John Eberle and Marty Rhode who were privately employed by the Roza Irrigation District to clean rubbish and abandoned cars out of a deep irrigation canal. It is not unusual for abandoned vehicles to be driven into the canal and collect in siphons that carry the water underground to depths that exceed 100 feet. The Roza Irrigation District must regularly clear debris from siphons.

Eberle and Rhode entered the Roza Canal near Zillah, Washington. They did not surface when planned, and the district called 911. The 911 dispatcher alerted the local fire department, which forwarded the call to the Yakima County S&R coordinator, County Sheriff's Deputy George Town. Deputy Town determined that an S&R dive team response was needed and summoned members of the Yakima County S&R dive team for an emergency mission. After first trying Hauber at home, he reached Hauber on duty at Yakima Fire Station One. Hauber requested and received permission from his battalion chief to respond to the call. The battalion chief first confirmed that there was a formal request for Hauber's assistance. Hauber offered to go off duty, but the chief declined, saying something like; "You are going as a Fire Department employee. This is a mutual aid call. You

will represent the fire department." Clerk's Papers (CP) at 606.

After returning home to retrieve his diving equipment, Hauber met the S&R dive team at the Roza canal siphon near Zillah, which is outside Hauber's fire fighting district. Hauber and another S&R diver, police officer J.R. Mestaz, entered the canal siphon about an hour later. Not long afterward, observers on the shore saw the divers' lights wink out; a minute later, air bubbles ceased to appear. Two backup divers were sent in, and both S&R divers were recovered. Hauber was pronounced dead at the scene, Mestaz died in the hospital three days later. Rhode's and Eberle's bodies were retrieved the next day.

A year later Hauber's estate and widow (collectively, the estate) filed a wrongful death suit against Yakima County and the Roza Irrigation District. The estate contends, among other claims, that there was inadequate planning, equipment, and safety preparation for the dives given the temperature, visibility, current, depth, and confined space within the canal siphon. Because the rescue was started long after the air carried by Rhode and Eberle would have been exhausted, the estate contends the mission should have been treated as a body recovery. The county moved for and received dismissal of all claims based on statutory immunity under RCW 38.52.190. The trial court judge certified this case for immediate review under RAP 2.3(b) and stayed the claims against Roza Irrigation District pending the outcome of this appeal. The Court of Appeals affirmed the trial judge, finding as a matter of law that the county was entitled to statutory immunity. *Hauber v. Yakima County*, 107 Wn. App. 437, 27 P.3d 257 (2001). We granted review, and affirm.

## ANALYSIS

Summary judgment is reviewed de novo with all inferences taken in favor of the nonmoving party. *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998). Ulti-

mately, only one issue is before this court: whether Yakima County is entitled to immunity.

■ S&R volunteers are entitled by statute to compensation for injury or death arising out of volunteer missions. RCW 38.52.260, .010(4). Compensation is calculated according to the Workers' Compensation Act, chapter 51.32 RCW. RCW 38.52.290. The mission must be a distinct assignment "to achieve a set of tasks related to an incident . . . or search and rescue operation that occurs under the direction and control of a local authorized official." WAC 118-04-060(10). Deputy Town was such an official, and there is no dispute that the rescue attempt was such a mission. *See* CP at 561-62.

S&R volunteers are barred by statute from bringing suit against "the state, . . . the agency, . . . the local organization for emergency management . . . , or . . . the county or city . . . for an injury or death arising out of . . . activities as an emergency worker." RCW 38.52.190. The legislature clearly intended to forge a compromise similar to the one in the Industrial Insurance Act, Title 51 RCW. The S&R volunteer is assured sure and certain relief; the local emergency management organization enjoys immunity from tort claims by volunteers for their injuries.

■ While the Industrial Insurance Act immunizes most employers from job related negligence suits, fire fighters and police officers, because of the vital and dangerous nature of their work, are provided extra protection and are allowed to both collect workers' compensation and bring job related negligence suits against their employers. RCW 51.04.010, 41.26.281. If Hauber had been killed as a fire fighter, he might have had a negligence suit against his employer. In effect, the estate argues that Yakima County has stepped into the shoes of Hauber's employer for the purposes of this immunity waiving statute, and Hauber is therefore entitled to sue the county.

Local governments and emergency management organizations, such as fire departments and sheriff's offices, may formally enter into various types of agreements, such as

mutual aid agreements and emergency management plans, to respond to each other's emergencies. *See generally* RCW 38.52.070; chapter 118-30 WAC. Workers rendering "outside aid" under these agreements are entitled to all of the statutory protections they would normally enjoy. RCW 38.52.080.[1] Since one of those statutory protections enjoyed by fire fighters is the right to sue their own employers for negligence resulting in on-the-job injuries, the estate argues that statutory protection must transfer by act of statute and apply to waive the immunity that would otherwise be enjoyed by the county under RCW 38.52.190. We disagree.

Hauber was both an S&R volunteer and a fire fighter. If Hauber had responded to the call as a fire fighter or pursuant to a mutual aid agreement, he may have been entitled to bring suit against the city for negligence under RCW 41.26.281 by application of RCW 38.52.080. If he responded as an S&R volunteer, the county has immunity pursuant to RCW 38.52.190.

We find that there are two ways the estate could establish that Hauber was acting as a fire fighter at the time of his death: (1) if he was acting within his regular duties within the normal geographic area, or (2) if he responded pursuant to a mutual aid agreement. We examine each in turn.

### Regular Duties

First, the estate argues that diving was one of Hauber's normal duties as a city fire fighter. Hauber was a member of the fire department's Technical Rescue Team, which is trained to do still water and swift water rescue. However, diving is not a normal duty of the Yakima City Fire Department. The estate does provide some evidence that underwater and enclosed space rescue may have been performed by Yakima fire fighters, which may have been sufficient to overcome summary judgment had Hauber's

---

[1] "Whenever the employees of any political subdivision are rendering outside aid pursuant to the authority contained in RCW 38.52.070 such employees shall have the same . . . privileges . . . as if they were performing their duties in the political subdivisions in which they are normally employed." RCW 38.52.080(1).

death occurred within the fire district on a fire fighting mission. We need not decide this because Hauber fails to meet the second prong of the test; it is undisputed that the rescue at Roza Irrigation District was 20 miles outside the Yakima City Fire Department's territorial jurisdiction. Hauber was not performing his regular duties within his normal geographic work area; therefore, we reject this argument and turn to the estate's other contentions.

## Mutual Aid Agreements

Second, the estate argues that Hauber was acting pursuant to a mutual aid agreement, and therefore his right to sue was preserved despite any contrary statutory authority. Fire fighters injured while responding to calls outside their normal jurisdiction pursuant to a mutual aid agreement lose none of their regular privileges. RCW 38.52.080(1). We have carefully reviewed the purported mutual aid agreements and conclude that none applies to these facts.

A mutual aid agreement is an arrangement for reciprocal emergency management aid and assistance between local emergency management organizations and public and private agencies in specific circumstances. Former RCW 38.52.090 (1996)[2] (providing that mutual aid and interlocal agreements will be in accordance with statutory requirements and actual agreements contracted between parties). The specific type of mutual aid promised must be addressed. *Id.*; RCW 38.52.091; *see also* RCW 39.34.030 (requiring agreements between local governments to state the parties, duration, structure, purpose, financing, methods, and the assistance to be provided). The Legislature clearly intended for such agreements to be formal and specific. *See also* WAC 118-30-060 (detailing requirements for emergency management plans and mutual aid plans).

Governmental entities may enter into different agreements to render aid to one another under specific circum-

---

[2] Former RCW 38.52.090 was substantially replaced by RCW 38.52.091 in 1997. *See* LAWS OF 1997, ch. 195, § 1.

stances. RCW 38.52.070. For example, many of the fire departments and cities in the Yakima Valley have entered into a formalized Emergency Medical Mutual Aid Agreement to provide emergency fire fighting, medical, and hazardous waste response assistance to one another. CP at 644-67. No search and rescue, water rescue, or diving activities are included in the agreement. Even if there had been, Yakima County Fire District No. 5 (the district in which the Roza incident took place and a signatory to the agreement) did not request mutual aid from Hauber's fire department; the county S&R dispatcher requested Hauber's participation in an emergency mission. Fire districts are independent governmental entities, and agreements between the fire departments do not bind the counties generally.[3]

The estate argues that the Yakima Valley Comprehensive Emergency Management Plan (YVCEMP) is a mutual aid agreement. We disagree. The YVCEMP pledges mutual assistance and coordinates responses to natural and man-made disasters between most governmental agencies in Yakima County in the case of acute overwhelming emergencies, such as nuclear war and volcanic eruption. In fact, the YVCEMP specifically references mutual aid plans and agreements among its signing members, undercutting the estate's argument that it is itself a mutual aid agreement. It states that the Emergency Services Council (an organizational unit created by the plan) "shall review and recommend for adoption emergency services and mutual aid plans and agreements . . . as are necessary to implement such plans and agreements." CP at 150.

Mutual aid agreements, by contrast, are specific contracts between local emergency management organizations and public and private agencies agreeing to assist one another in specific circumstances. *See* former RCW

---

[3] The county asserts, and the estate does not refute, that the Yakima fire districts are independent government entities such as those organized under chapter 52.02 RCW, and not subdivisions of other government entities. We assume without deciding that this is true.

38.52.090(1) (providing that mutual aid will be in accordance with agreements and directing the development of a form contract). The type of mutual aid promised must be addressed. *Id*. Further, binding mutual aid agreements pledge reciprocal aid; the YVCEMP contains no promise for promise exchanges. *See, e.g., Higgins v. Egbert*, 28 Wn.2d 313, 317-18, 182 P.2d 58 (1947); *accord* former RCW 38.52.090, .091, 39.34.030.[4]

There is no relevant mutual aid agreement. Rusty Hauber gave his life to save another. If police and fire fighters are to receive the same protections for their voluntary services as they receive for their normal duties, statutory reform or a formal mutual aid agreement is required. It may well be that law enforcement officers and fire fighters, because of the risks unique to their work, should be accorded this extra protection when responding to county S&R requests. But to provide such protection to Hauber, the S&R must have entered into formal mutual aid agreements with his employer. It did not. Because we find no mutual aid agreement existed, summary judgment was appropriate.

■ We recognize that Hauber's battalion chief believed that Hauber was responding to a mutual aid call. Unfortunately, the chief's subjective belief is not enough to impose liability upon the county. The estate argues that the fire department log noted Hauber as out on a mutual aid call. This is likely due to a different usage of the term among the fire fighting professionals involved who apparently used "mutual aid" to refer to any request for assistance from outside their jurisdiction, rather than responses pursuant to a formalized mutual aid agreement. *See* CP at 42 (Dep. of Rocky Dean Willette).

---

[4] Other mutual aid agreements submitted by the estate are inapplicable. Several emergency management services in and around Yakima have entered into a mutual aid agreement to provide assistance to one another in case of "mass casualty incidents, multiple emergencies, or medical responses beyond the capabilities of local agencies." CP at 642. Even assuming the two fire departments are bound by this (difficult to determine in the absence of full signature pages), single dive rescues were not covered, and Yakima County itself is not a signatory to this agreement.

We therefore hold that Hauber was not responding pursuant to a mutual aid agreement.[5]

POTENTIAL STATUTORY CONFLICT

■ The estate argues that RCW 38.52.080(1) (which guarantees that city and county employees retain their rights and privileges whenever they render aid outside the scope of their normal employment) and RCW 38.52.190 (which limits emergency workers' claims to workers' compensation) are in conflict. We disagree. If Hauber had been responding under a mutual aid agreement to fight a fire or provide other prior-agreed-upon emergency services in the Zillah area, and he was injured because of the local fire department's negligence, he would have a viable claim under RCW 38.52.080(1). If RCW 38.52.080(1)'s use of "outside" is understood to be geographic, there is no conflict. RCW 38.52.080(1) says:

> Whenever the employees of any political subdivision are *rendering outside aid* pursuant to the authority contained in RCW 38.52.070 such employees shall have the same powers, duties, rights, privileges, and immunities *as if they were* performing their duties *in the political subdivisions in which they are normally employed.*

(Emphasis added.) The preceding statute also uses "outside" geographically:

> Each political subdivision of this state is hereby authorized and directed to establish a local organization or to be a member of a joint local organization for emergency management in accordance with the state comprehensive emergency management plan and program . . . . Each local organization or joint local

---

[5] The estate also argues that WAC 118-04-080, which provides for the automatic registration of government employees who are required to perform emergency duties as a normal part of their job, preserves Hauber's RCW 41.26.281 rights when acting as an S&R volunteer. We disagree. The regulation merely facilitates registration for state employee emergency personnel and directs which compensation plan will cover injuries. *Cf. Hauber v. Yakima County*, 107 Wn. App. 437, 440, 27 P.3d 257 (2001). It does not convert emergency workers under one statute to government employees under another. Other WAC provisions cited do not help the petitioner.

organization for emergency management shall perform emergency management functions *within the territorial limits* of the political subdivision within which it is organized, and, in addition, shall conduct such functions *outside of such territorial limits* as may be required pursuant to the provisions of this chapter.

RCW 38.52.070(1) (emphasis added). Reasonably read, RCW 38.52.080(1) maintains the rights and privileges of those who are rendering emergency aid within the scope of their employment but outside the territorial boundaries of their political subdivision (1) in response to a mutual aid agreement, or (2) in response to their employer's order as part of an emergency management plan response. We find no conflict.

CONCLUSION

We affirm the trial court and the Court of Appeals and remand for further proceedings among the remaining parties consistent with this opinion. We grant Yakima County's request for reasonable fees under RAP 18.1 and costs under RAP 14.2.

ALEXANDER, C.J., SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, and BRIDGE, JJ., and WEBSTER, J. Pro Tem., concur.