106 P.3d 802 (2005)
125 Wash.App. 794
RABANCO LTD., a Washington corporation, Appellant,
v.
KING COUNTY, a political subdivision of the State of Washington, Respondent.
No. 54535-3-I.
Court of Appeals of Washington, Division 1.
February 14, 2005.
*803 Kelly P. Corr, Kevin Craig, Corr Cronin, Seattle, WA, for Appellant.
P. Stephen DiJulio, Jeremy R. Larson, Foster Pepper & Shefleman, Norm Maleng, King County Prosecuting Attorney, Seattle, WA, for Respondent.
APPELWICK, J.
Rabanco appeals from summary judgment dismissing its claim that RCW 36.58.040 requires King County to enter into interlocal agreements before the county can designate a disposal site for waste collected entirely within the borders of King County. RCW 36.58.040 requires counties to enter into interlocal agreements for disposal of waste when the geographic area in which waste collection is authorized lies in more than one county  not when the private hauler merely has authority to collect waste in more than one county. The waste at issue was collected in a geographic area wholly contained within King County. King County has authority to designate its own landfill as the sole disposal site, and is not required to consent to disposal of this waste in a different county. Therefore, no interlocal agreement is required. We affirm.

FACTS
The Washington Utilities and Transportation Commission (WUTC) grants authority to private haulers to collect municipal solid waste. Municipal solid waste "is solid waste generated by residences, stores, offices, and others that is not industrial, agricultural or construction, demolition or landscaping debris." This authority is granted by a certificate of convenience and necessity issued by the WUTC called a "G Certificate." Certificates set out the geographic areas in which the company is authorized to collect waste. In order to operate without a G Certificate, the company must have a contract with the city or county in which it seeks to operate.
In the late 1990s, the WUTC updated its mapping and information systems, which were in disarray. As part of this effort, solid waste collection companies holding more than one certificate sometimes chose to consolidate their certificates. This voluntary process helped the WUTC provide more accurate mapping of service areas.
Appellant Rabanco Ltd. is a private hauling company that collects and processes solid waste. As part of the WUTC's updating process, Rabanco asked the WUTC to consolidate three of its certificates. The WUTC granted Rabanco's request and ordered that the three certificates be consolidated. The consolidated Rabanco certificates were re-issued as certificate G-12. The G-12 certificate authorized Rabanco to collect solid waste in parts of King, Snohomish, Yakima, Skamania, and Klickitat counties. Therefore, Rabanco has a certificate for collection in more than one county. King County admitted that it does not have interlocal agreements with any of the counties listed in Rabanco's permit.[1]
RCW 36.58.040 provides counties with authority to establish a designated disposal site for solid waste collected from unincorporated areas:
The legislative authority of a county may by ordinance provide for the establishment of a system or systems of solid waste handling for all unincorporated areas of the county or for portions thereof. A county may designate a disposal site or sites for all solid waste collected in the unincorporated areas pursuant to the provisions of a comprehensive solid waste plan adopted pursuant to chapter 70.95 RCW. However for any solid waste collected by a private hauler operating under a certificate *804 granted by the Washington utilities and transportation commission under the provisions of chapter 81.77 RCW and which certificate is for collection in a geographic area lying in more than one county, such designation of disposal sites shall be pursuant to an interlocal agreement between the involved counties.
Rabanco and its affiliates own landfills in several states, including a landfill in Klickitat County, Washington. King County owns the Cedar Hills landfill in King County. Rabanco alleges that it is much less expensive for it to transport waste it collects in King County for disposal at its own Klickitat County landfill than at the Cedar Hills landfill. King County Code § 10.08.020 ("the ordinance") provides:
System of disposal.
A. Under the authority provided by the King County Charter and RCW 36.58.040, a system is hereby established for disposal of all solid waste either generated, collected or disposed, in unincorporated King County. Additionally, this system shall include all solid waste either generated or collected, or both, in any other jurisdictions with which an interlocal agreement exists under K.C.C. 10.08.130.
B. It is unlawful for any person to dispose of county solid waste except at disposal facilities and in a manner authorized under this title.
C. Unless specifically authorized by a King County ordinance, it is unlawful for any commercial hauler or other person or entity to deliver any county solid waste to a place other than a disposal facility designated by the county to receive the particular waste.
D. It is unlawful for any person to deliver county solid waste other than unauthorized waste as determined by the manager to any facility for final disposal other than the county-owned Cedar Hills regional landfill, unless the manager has provided prior written authorization for the disposal for public health, safety, welfare or planning purposes and the disposal is consistent with the adopted King County Solid Waste Comprehensive Plan. (Ord. 14811 § 9, 2003: Ord. 8891 § 13, 1989: Ord. 7708 § 1 (part), 1986).
Rabanco asserts that King County's designation of the Cedar Hills landfill as the site for all unincorporated King County municipal solid waste is impermissible under RCW 36.58.040. Rabanco argues that RCW 36.58.040 does not allow King County to enforce the ordinance against any private hauler with a WUTC certificate authorizing collections in more than one county. Since it has such a WUTC certificate, Rabanco argues that King County cannot require it to comply with the ordinance.
The trial court's grant of summary judgment rested on its interpretation of a clause in RCW 36.58.040: "which certificate is for collection in a geographic area lying in more than one county." According to the trial court, and as argued by King County, this clause "refers to a collection area which crosses county borders so that it lies in more than one county." Rabanco admits that it has no routes that include areas both within and outside King County. Rabanco's certificate provides it with authority to collect waste in multiple individual geographic areas, each lying wholly within a single county and not crossing county borders. The trial court concluded:
The court must consider the language in its context. Here, logic and legislative history dictate that the legislature was addressing a potential problem when a collection area crossed county borders. It was not concerned with a need for an interlocal agreement between King and Spokane counties if a garbage hauler were to collect garbage in Seattle and Spokane.
The trial court granted summary judgment in favor of King County, upholding the ordinance. Rabanco argues that the trial court improperly interpreted RCW 36.58.040, and that the ordinance violates the statute.

ANALYSIS
An appellate court engages in the same inquiry as the trial court when reviewing an order of summary judgment. Denaxas v. Sandstone Court, 148 Wash.2d 654, 662, 63 P.3d 125 (2003). Summary judgment is appropriate if the pleadings, affidavits, depositions, *805 answers to interrogatories, and admissions on file demonstrate the absence of any genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. CR 56(c). Issues of statutory construction are questions of law which this court reviews de novo. In re Marriage of Caven, 136 Wash.2d 800, 806, 966 P.2d 1247 (1998).
Both Rabanco and King County argue that the plain meaning of the statute favors their interpretation. Rabanco argues that
the statute's plain language provides that when a private hauler collects solid waste pursuant to a permit from the [WUTC] covering an area in more than one county, any designation of a disposal site must be made by an interlocal agreement between those counties. Contrary to the statute's plain language, the trial court interpreted RCW 36.58.040 to include a new and additional requirement  namely, that the hauler's collection routes must cross county borders  a requirement that simply does not exist.
King County responds that
The clear and plain reading of RCW 36.58.040 establishes that a county can designate one or more disposal site(s) for all the waste collected in the unincorporated areas of that county. RCW 36.58.040 also contemplates the circumstance in which a private hauler receives authority to collect waste in a territory that crosses county boundaries. Only when a WUTC certificate authorizes collection in a geographic area lying in more than one county is there an issue as to which county may designate the disposal site for combined county waste. RCW 36.58.040 resolves that issue by requiring the affected counties to enter an interlocal agreement.

I. Principles of Statutory Interpretation
"The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002). The plain meaning of a statute may be discerned "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Campbell, 146 Wash.2d at 11, 43 P.3d 4. The court "must give words in a statute their plain and ordinary meaning unless a contrary intent is evidenced in the statute." Caven, 136 Wash.2d at 806, 966 P.2d 1247.
The court "cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language." State v. Delgado, 148 Wash.2d 723, 727, 63 P.3d 792 (2003). Likewise, the court cannot delete language from an unambiguous statute: "Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003) (quoting Davis v. Dep't of Licensing, 137 Wash.2d 957, 963, 977 P.2d 554 (1999)) (internal quotation omitted). Where the statute is ambiguous or has conflicting provisions, the court may arrive at the legislature's intent by applying recognized principles of statutory construction. J.P., 149 Wash.2d at 450, 69 P.3d 318.

II. Plain Meaning of RCW 36.58.040
The critical language in this statute, as the trial court identified, is the phrase "which certificate is for collection in a geographic area lying in more than one county."
Under Rabanco's interpretation, a WUTC certificate that authorizes collection in more than one county requires interlocal agreements even if the certificate provides for discrete geographical areas each fully enclosed within the border of a single county. Under this interpretation, the words "a geographic area lying in" would be rendered superfluous. That is, if Rabanco's interpretation is correct, the Legislature could have substituted the phrase "which certificate is for collection in more than one county" for the phrase it used. Because statutes must be interpreted such that no portion is rendered meaningless or superfluous, J.P., 149 *806 Wash.2d at 450, 69 P.3d 318, Rabanco's interpretation is incorrect.
Rabanco argues, however, that under RCW 1.12.050 and Hinton v. Johnson, 87 Wash.App. 670, 942 P.2d 1061 (1997), the "use of the singular necessarily includes the plural." Therefore, Rabanco argues that the words "a geographic area" must be interpreted as "a geographic area or geographic areas."
Rabanco's argument overextends the provisions of RCW 1.12.050 and misapplies the Hinton decision. RCW 1.12.050 provides that
[w]ords importing the singular number may also be applied to the plural of persons and things; words importing the plural may be applied to the singular; and words importing the masculine gender may be extended to females also.
In Hinton, this court noted that "[g]enerally, we construe `a' as applying to the plural as well as the singular, unless a contrary intention appears on the face of the statute." Hinton, 87 Wash.App. at 675, 942 P.2d 1061. Because RCW 1.12.050 uses the word "may," it does not require the court to interpret all singular references to include plurals. Further, the Hinton court stated a rule of general application that singulars include plurals, but specifically excepted statutes that facially express "a contrary intention." As the trial court noted, the statute must be read in context, and the plain language of the statute indicated an intent contrary to applying the plural in this case.
If RCW 36.58.040 is interpreted in the singular as written, then to give full meaning to all provisions of the statute, the phrase "which certificate is for collection in a geographic area lying in more than one county" must mean something more than the phrase "which certificate is for collection in more than one county." It must mean that a geographic area of collection itself lies in more than one county.
If the plural is implied, then the statute's meaning would change  and part of the text would again be rendered superfluous. That is, if the statute were interpreted to mean "which certificate is for collection in a geographic area or geographic areas lying in more than one county," it could again be simplified to the phrase "which certificate is for collection in more than one county." In order to give meaning to the words "a geographic area lying in," they must be read in the singular as provided to avoid rendering them superfluous.
King County's interpretation better follows the plain meaning rule. The first part of RCW 36.58.040 grants King County authority to designate a final disposal site in King County for waste collected in unincorporated King County:
A county may designate a disposal site or sites for all solid waste collected in the unincorporated areas pursuant to the provisions of a comprehensive solid waste plan adopted pursuant to chapter 70.95 RCW.
The statute provides further that if a geographic collection area granted in a G Certificate lies in more than one county, designation of disposal sites must be "pursuant to an interlocal agreement between the involved counties." RCW 36.58.040. This would only apply when a private hauler has been granted authority to collect waste in an area crossing county borders, for only in such a case are there two "involved counties." Under Rabanco's interpretation, involved counties would be all the counties "involved" in the WUTC certificate. Under King County's interpretation, the requirement is more logical: it would involve counties only when there is a multi-county waste issue. That is, RCW 36.58.040 would give power to each county to direct disposal of its own waste, and require multi-county agreement only when a geographic collection area encompasses the waste of more than one county.
In this regard, adopting Rabanco's interpretation would create absurd results. As the trial judge noted, the Legislature would not seek to require King and Spokane counties to reach an interlocal agreement because a WUTC certificate granted a solid waste hauler authority to collect in Seattle and in Spokane. As King County notes,
[t]o construe the statute as Rabanco argues could require an interlocal agreement between and among all counties in the State if a private hauler were to obtain *807 authority to collect in even the smallest areas of each county. If one of those several counties refuses to participate, all the other counties would be barred from designating disposal sites for waste collected within their borders.
Further, whenever the WUTC modified a G certificate to add a county, Rabanco's interpretation would require each preexisting county in the certificate to enter into an interlocal agreement with the added county. If the added county refused to enter into an agreement, then the disposal site designations of the preexisting counties would be invalid.
Contrary to Rabanco's interpretation of the trial court ruling, the trial court did not add a requirement that "the counties in the WUTC must be adjacent or that the hauler's collection routes actually cross those counties' borders." Rather, the trial court concluded that only when the WUTC grants a geographic area that crosses county lines will the interlocal agreement requirement apply. This is not dependent on how the private hauler actually chooses to operate within that single geographic area. Further, nothing in the trial court's ruling or King County's interpretation of the statute requires adjacent counties. If one single geographic area started in Snohomish County, went down through King County, and ended in Pierce County, then all three would be subject to the interlocal agreement requirement, even though Snohomish and Pierce counties share no common border.
We hold that the plain meaning of RCW 36.58.040 requires interlocal agreements between counties only if a WUTC certificate grants a private hauler collection authority in a single geographic area that crosses county borders.

III. Legislative History of RCW 36.58.040
Although both parties argue that RCW 36.58.040 is clear and that its plain meaning supports their respective position, the parties reach opposite plain meanings. We agree with King County's interpretation of the plain meaning of the statute. However, if there is any ambiguity as to the statute's meaning, an examination of the legislative history and the structure of waste hauling and disposal authority in Washington leads to the same result.
Where the intent of a statute is not clear from its plain meaning, the courts can resort to statutory construction, including a consideration of legislative history. See Pumilite Tualatin, Inc. v. Cromb Leasing, Inc., 82 Wash.App. 767, 770, 919 P.2d 1256 (1996) (quotations and citations omitted).
The Bill Digest for SSHB 721 states that the bill:
Authorizes each county to provide for the establishment of a system of solid waste disposal for all the unincorporated areas of the county or portions thereof, to designate disposal sites, and provide for processing and conversion of solid wastes into other valuable products. Requires designation of sites for collections by state licensed private haulers from multicounty areas to be made under an interlocal agreement between the involved counties.
(emphasis added). The Senate floor debate records Senator North's answer to Senator Rasmussen's question: "[W]hat are the difficulties that King County is having that they are sponsoring this bill. That might clear up the matter." Senator North, after noting the huge capital investment King County would make to provide appropriate waste management systems and equipment, responded:
At present when you have a private collection franchise if you want to pick up the garbage in the unincorporated part of the county and you want to truck it down to ... Cowlitz County and dump it there, you can do so. This bill would prohibit that. If a private collection group wants to take its garbage to another county then it would be up to an inter-local cooperation agreement between the two counties to work this out so that it is very clear as to who is receiving the ultimate garbage disposal.
This also assures King County or any county that it is going to continue to have in the future quite a garbage disposal business to justify that huge capital investment.
*808 This bill strengthened county control over the disposal of solid waste collected in unincorporated areas of the county. Although Rabanco argues that Senator North's comment supports Rabanco's argument and requires an interlocal agreement, it does not. Senator North's comment demonstrates that the statute prohibits a private hauler from collecting waste in one county and taking it to another county without an agreement between those counties. These statements do not suggest that a county must enter into an interlocal agreement before it can direct disposal of waste collected only within the county's geographic borders, at a disposal site within its borders, merely because the private hauler has a multi-county certificate. Senator North's comment also shows that the statute was intended to preserve a county's control over disposal of waste collected within the county to protect a county's substantial investment in its solid waste management system. Rabanco's reading is at odds with this stated purpose.
The division of authority between the WUTC and counties further supports this legislative intent. The WUTC issues certificates authorizing hauling of solid waste. RCW 81.77.040. The WUTC regulates solid waste collection companies in Washington, RCW 81.77.030, but does not have control over waste disposal. "The handling and disposal of solid waste is a governmental function." Weyerhaeuser v. Pierce County, 124 Wash.2d 26, 40, 873 P.2d 498 (1994). Washington counties are given exclusive control over waste in their unincorporated areas by RCW 36.58.040. Under Rabanco's interpretation, the WUTC would have implicit authority to eliminate the power statutorily granted to a county over waste disposal by merely granting hauling authority to a single company in more than one county.
Had the legislature wished to increase the power of the WUTC and decrease the power of counties over waste disposal, it could have done so explicitly. Instead, RCW 81.77.030(5) requires the opposite: the WUTC must supervise and regulate every solid waste collection company in the state "[b]y requiring compliance with local solid waste management plans and related implementation ordinances." The WUTC's file on the Rabanco certificate consolidation contains nothing stating or suggesting that as a result of the consolidation, Rabanco would claim a solid waste disposal implementing ordinance would be invalid. The WUTC has itself rejected the implication that by consolidating or amending its certificates, county disposal site designations would be invalidated under RCW 36.58.040. The consolidation, rather, was an administrative and record-keeping function of the WUTC.
We affirm summary judgment in favor of King County.
WE CONCUR: COX, C.J., and BAKER, J.
NOTES
[1] King County has started negotiating with Snohomish and Pierce counties to create such agreements as a result of this lawsuit. The purpose of this negotiation was to make this part of the lawsuit "go away." As the trial judge noted in granting summary judgment to King County, "King County simply seems to be taking sensible steps to remedy a problem it would face if the court were to adopt a different interpretation of RCW 36.58.040."