[No. 55256-2-I.   Division One.   June 19, 2006.]

KEVIN J. LOCKE, *Respondent*, v. THE CITY OF SEATTLE ET AL.,
*Appellants*.

*Thomas A. Carr*, *City Attorney*, and *Thomas S. Sheehan* and *Gregory D. Fuller*, *Assistants*; and *William R. Hickman* and *Pamela A. Okano* (of *Reed McClure*), for appellants.

*John L. O'Brien* and *David J. Wieck*; and *William J. Rutzick* (of *Schroeter, Goldmark, & Bender*), for respondent.

*Milton G. Rowland* on behalf of Washington State Association of Municipal Attorneys, amicus curiae.

*Alexander J. Skalbania* and *Thomas A. Woodley* on behalf of International Association of Firefighters, amicus curiae.

¶1 DWYER, J. — Fire fighter trainee Kevin Locke was injured during a training exercise. A jury found the city of Seattle negligent and returned a substantial verdict in Locke's favor. The city now appeals from the judgment entered on the verdict, raising constitutional, statutory, evidentiary, instructional, and procedural challenges. Finding no error, we affirm.

## FACTS

¶2 Kevin Locke was hired by the Seattle Fire Department as a fire fighter trainee. The city enrolled him as a "fire fighter" member of the Law Enforcement Officers' and Fire Fighters' Retirement System (LEOFF) on April 19, 2000.[1]

¶3 From June 25 through June 29, 2000, Locke's class of fire fighter recruits trained at the Washington State Patrol Fire Training Academy in North Bend, Washington. On June 29, during an exercise drill, Locke fell from a 50-foot ladder and was injured.

¶4 Locke sued the city of Seattle for negligence.[2] Locke brought his claim pursuant to RCW 41.26.281, which pro-

---

[1] Persons who first became LEOFF members on or after October 1, 1977 are enrolled in LEOFF Plan 2. RCW 41.26.030(29).

[2] Originally, Locke also sued the State of Washington, the Washington State Patrol, and several city and state employees for negligence and violation of 42 U.S.C. § 1983. The claims related to § 1983, the State, the State Patrol, and individual employees were dismissed. Locke's wife also voluntarily dismissed her claims.

vides LEOFF members with the right to bring personal injury claims against their governmental employers.

¶5 At trial, Locke argued that the city's fire department employees negligently conducted the training exercise, causing him to suffer from heat, exhaustion, and dehydration, which, along with operational aspects of the training drill, created unsafe conditions that caused him to fall and be injured. The city moved for summary judgment, arguing, among other things, that Locke was not a LEOFF member, and that he had assumed the risk of being injured. The trial court denied the motion.

¶6 Locke's case was heard by a jury from May 17 to July 7, 2004. At trial, the parties presented testimony from a large number of witnesses and submitted hundreds of exhibits. On July 13, 2004, the jury returned a 10 to 2 verdict for Locke but found him 10 percent at fault, resulting in a total award of $1,842,800.

¶7 The city moved for remittitur, arguing that there was a defect in the jury's calculation of damages. The trial court granted the motion, recalculated the damages, and entered judgment in the amount of $1,513,663.88. The trial court subsequently denied the city's motion for a new trial.

¶8 On appeal, the city challenges the basis for Locke's suit on constitutional and statutory grounds and assigns error to numerous trial court rulings. The parties are well aware of the extensive record in this case, very little of which pertains to the city's appellate arguments. Accordingly, the facts relevant to the issues presented will be discussed in connection with the resolution of those issues.

## DISCUSSION

¶9 The majority of the city's appeal concerns statutory and constitutional arguments regarding the LEOFF statute, chapter 41.26 RCW. We therefore begin with a brief description of LEOFF, as provided in *Fray v. Spokane County*, 134 Wn.2d 637, 952 P.2d 601 (1998):

In 1969, the Legislature enacted a comprehensive benefits plan for police officers and fire fighters titled the "Washington Law Enforcement Officers' and Fire Fighters' Retirement System Act," commonly referred to as LEOFF. This system of benefits was codified as RCW 41.26. LEOFF was amended in 1971 to provide greater benefits to injured police officers and fire fighters than they would receive under the workers' compensation system. One such benefit codified in former RCW 41.26.280 [now RCW 41.26.281] granted LEOFF members a "right to sue" their employers for negligence. This new provision read as follows:

> If injury or death results to a member from the *intentional or negligent act or omission of* [*the*] *member's governmental employer*, the member, the widow, widower, child, or dependent of the member shall have the privilege to benefit under this chapter *and also have cause of action against the governmental employer as otherwise provided by law, for any excess of damages over the amount received or receivable under this chapter.*

*Fray*, 134 Wn.2d at 643-44 (footnotes omitted). The *Fray* court also explained that LEOFF members have been entitled to sue their governmental employers for negligent and intentional injuries since 1971 and that a 1992 amendment purporting to repeal that right with regard to LEOFF Plan 2 members was invalid. *Id.* at 656.

*I. RCW 4.96.010 Waives Municipal Sovereign Immunity*

¶10 We first address the city's claim that it is entitled to sovereign immunity from its LEOFF-member employees' tort claims. The city relies on RCW 4.96.010(1), which provides:

> All local governmental entities, whether acting in a governmental or propriety capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their past or present officers, employees, or volunteers while performing or in good faith purporting to perform their official duties, to the same extent as if they were a private person or corporation.

¶11 Although the statute generally waives a municipality's sovereign immunity, the city nonetheless contends that

the phrase "to the same extent as if they were a private person or corporation" operates to provide the city with sovereign immunity from claims under LEOFF because a private person or corporation would not be required to pay into a workers' compensation fund and still be subject to an employee's tort suit.

¶12 The city's argument is inconsistent with Washington Supreme Court decisions holding that RCW 4.96.010 permits different rules of liability for the tortious conduct of governmental entities as compared with private persons. *See Bailey v. Town of Forks*, 108 Wn.2d 262, 265, 737 P.2d 1257, 753 P.2d 523 (1987); *King v. City of Seattle*, 84 Wn.2d 239, 243, 525 P.2d 228 (1974), *overruled on other grounds by Nielson v. Eisenhower & Carlson*, 100 Wn. App. 584, 999 P.2d 42 (2000); *Evangelical United Brethren Church v. State*, 67 Wn.2d 246, 253, 407 P.2d 440 (1965). The difference in municipal liability compared to a private party's liability set forth in these cases does not preclude the applicability of RCW 4.96.010 to municipalities. As the Supreme Court explained:

> [I]t is well recognized that RCW 4.96.010 was not intended to create new duties where none existed before. Rather, it was to permit a cause of action in tort *if a duty could be established*, just the same as with a private person.

*J&B Dev. Co. v. King County*, 100 Wn.2d 299, 305, 669 P.2d 468 (1983), *rev'd on other grounds by Meaney v. Dodd*, 111 Wn.2d 174, 759 P.2d 455 (1988), *and Taylor v. Stevens County*, 111 Wn.2d 159, 759 P.2d 447 (1988). *See also Beal v. City of Seattle*, 134 Wn.2d 769, 784, 954 P.2d 237 (1998) (explaining public duty doctrine).

¶13 The correct interpretation of RCW 4.96.010 is that if a government is found to have engaged in tortious conduct under applicable substantive law, which may or may not be different for government than for private parties, then the government will be liable for such tortious conduct "to the same extent as if they were a private person or corporation." *See Taylor v. City of Redmond*, 89 Wn.2d

315, 319, 571 P.2d 1388 (1977) (sovereign immunity waived by RCW 4.96.010 for suits brought by LEOFF Plan 1 members).

¶14 This reading of RCW 4.96.010 is consistent with the principle that the legislature is not presumed to do a meaningless act. *Taylor*, 89 Wn.2d at 319 ("[I]t is a fundamental principle of statutory construction that courts must not construe statutes so as to nullify, void or render meaningless or superfluous any section or words of same."). RCW 41.26.281 places a statutory duty on municipal corporations such as the city not to injure employee fire fighters or police officers by negligent acts or omissions. This satisfies the public duty doctrine and establishes a cause of action that is in turn permitted by RCW 4.96.010. *Bailey*, 108 Wn.2d at 269; *Halvorson v. Dahl*, 89 Wn.2d 673, 676, 574 P.2d 1190 (1978).

¶15 In sum, the city's sovereign immunity from claims brought under the LEOFF statute is waived by RCW 4.96.010.

*II. RCW 41.26.281 Does Not Violate Washington Constitution Article II, Section 19 or Article I, Section 12*

¶16 We next address the city's arguments regarding the constitutionality of RCW 41.26.281. The city argues that RCW 41.26.281 is unconstitutional because it violates both article II, section 19, and article I, section 12 of the state constitution.

¶17 We apply de novo review when interpreting a statute and when applying constitutional rights. *State v. Manro*, 125 Wn. App. 165, 170, 104 P.3d 708, *review denied*, 155 Wn.2d 1010 (2005); *State v. Salavea*, 151 Wn.2d 133, 140, 86 P.3d 125 (2004). Statutes are presumed to be constitutional. In no doubtful case should the courts pronounce legislation to be contrary to the constitution, and all doubts should be resolved in favor of constitutionality. *State ex rel. Smilanich v. McCollum*, 62 Wn.2d 602, 606, 384 P.2d 358 (1963).

## A. Washington Constitution Article II, Section 19

¶18 The city claims that RCW 41.26.281 is unconstitutional because the title of the bill enacting it violates article II, section 19 of the Washington Constitution. Article II, section 19 provides that "[n]o bill shall embrace more than one subject, and that shall be expressed in the title." The purpose of article II, section 19 is to "assure that the members of the legislature and the public are generally aware of what is contained in proposed new laws." *State v. Thorne*, 129 Wn.2d 736, 757, 921 P.2d 514 (1996). " 'The title to a bill need not be an index to its contents; nor is the title expected to give the details contained in the bill.' " *Wash. Fed'n of State Employees v. State*, 127 Wn.2d 544, 555, 901 P.2d 1028 (1995) (quoting *Treffry v. Taylor*, 67 Wn.2d 487, 491, 408 P.2d 269 (1965)). It is enough that the title "would lead to an inquiry into the body of the act, or indicate to an inquiring mind the scope and purpose of the law." *Young Men's Christian Ass'n v. State*, 62 Wn.2d 504, 506, 383 P.2d 497 (1963). Where the legislature has chosen a general title, that title will be granted a liberal construction. "So long as the title embraces a general subject, it is not violative of the constitution even though the general subject contains several incidental subjects or subdivisions." *Kueckelhan v. Fed. Old Line Ins. Co.*, 69 Wn.2d 392, 403, 418 P.2d 443 (1966).

¶19 The "right to sue" provision in LEOFF, RCW 41-.26.281, was originally contained in a 1971 bill entitled "An Act Relating to Law Enforcement Officers and Fire Fighters." LAWS OF 1971, 1st Ex. Sess., ch. 257, § 15.[3] The city contends that "[n]o one reading this title would dream that it included a waiver of governmental employers' sovereign immunity."

¶20 We disagree. As explained above, RCW 4.96.010, which was enacted in 1967, waived municipal sovereign

---

[3] The "right to sue" provision was originally codified as RCW 41.26.280. With minor changes, it was recodified as RCW 41.26.058 by Laws of 1991, ch. 35, § 28. It was recodified again as RCW 41.26.281 by Laws of 1992, ch. 72, § 11. The city's argument is not directed to either the 1991 or 1992 legislation.

immunity. LAWS OF 1967, ch. 164, § 1, *amended by* LAWS OF 1993, ch. 449, § 2.[4] The LEOFF benefit system became law in 1970. LAWS OF 1970, 1st Ex. Sess., ch. 6, § 2(1), at 35. The challenged effect was, therefore, accomplished not by chapter 41.26 RCW, as argued by the city, but by chapter 4.96 RCW.

¶21 Moreover, the title of the bill ("An Act Relating to Law Enforcement Officers and Fire Fighters") is constitutionally sufficient. The title embraces a general subject and indicates the scope and purpose of the legislation. It properly gives notice that would lead to an inquiry into the body of the act regarding the benefits granted to law enforcement officers and fire fighters, including the right to bring a cause of action alleging negligence against their municipal employers.

### B. Washington Constitution Article I, Section 12

¶22 The city also argues that the LEOFF statute violates article I, section 12 of the state constitution[5] by requiring the city to pay workers' compensation benefits to LEOFF Plan 2 members without giving the city any corresponding immunity from suit.

¶23 The city's position is wrong on several grounds. First, article I, section 12 distinguishes between a "municipal corporation," such as the city, and other corporations and citizens. As held in *City of Seattle v. State*, 103 Wn.2d 663, 668, 694 P.2d 641 (1985), the city "does not itself have rights under the equal protection clauses of the state and federal constitutions." *See also Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 83 P.3d 419 (2004). The State grants municipal corporations many privileges and immunities that are not shared by citizens and private corporations. For example, the city of Seattle

---

[4] The State's sovereign immunity is waived by RCW 4.92.090, enacted by Laws of 1961, ch. 136, § 1, *amended by* Laws of 1963, ch. 159, § 2.

[5] "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations."

may tax its residents to raise money for activities such as fire fighting. Nothing in section 12 prohibits the State from imposing additional requirements on its municipal corporations in connection with such activities.

¶24 Also, the city does not and cannot argue either that a fundamental right is implicated or that private employers or LEOFF members are members of a suspect class. In an equal protection analysis, where a challenge to a provision does not implicate a fundamental right or suspect class, as those terms are defined in established case law, a court shall apply "minimal scrutiny." *Yakima County Deputy Sheriff's Ass'n v. Bd. of Comm'rs*, 92 Wn.2d 831, 835-36, 601 P.2d 936 (1979). When employing such scrutiny, the court engages in three inquiries:

First, does the classification apply alike to all members within the designated class? . . .

Second, does some basis in reality exist for reasonably distinguishing between those within and without the designated class? . . .

Third, does the challenged classification have any rational relation to the purposes of the challenged statute? More specifically, does the difference in treatment between those within and without the designated class serve the purposes intended by the legislation?

*Id.* (citations omitted).

¶25 Minimal scrutiny is called for in this case because no "privileges or immunities," as that term is used in article I, section 12, are implicated. The power to bring suit for negligence against an employer—or, conversely, the right to avoid such a suit—is not a privilege or immunity under article I, section 12.[6]

---

[6] *See Paulson v. Pierce County*, 99 Wn.2d 645, 664 P.2d 1202 (1983) (minimal scrutiny applied in article I, section 12 challenge where liability for flood control activities was precluded for counties but not municipalities); *Campos v. Dep't of Labor & Indus.*, 75 Wn. App. 379, 880 P.2d 543 (1994) (minimal scrutiny applied in article I, section 12 challenge where the right to seek adjustment to workers' compensation claims was limited by a statute of limitations).

■ ¶26 In applying the three steps of "minimal scrutiny" to RCW 41.26.281, we find that the provision is clearly applied alike to all members of the designated class. First, the provision applies to all members of the LEOFF system. Second, "some basis in reality" exists to distinguish the designated class, in that the class is distinguished by the definition established for "member" under the LEOFF system. And, third, the challenged classification has a rational relation to the purposes of the challenged statute. As the Supreme Court explained in *Hauber v. Yakima County*, 147 Wn.2d 655, 56 P.3d 559 (2002),

> While the Industrial Insurance Act immunizes most employers from job related negligence suits, fire fighters and police officers, because of the vital and dangerous nature of their work, are provided extra protection and are allowed to both collect workers' compensation and bring job related negligence suits against their employers.

*Hauber*, 147 Wn.2d at 660 (citing RCW 51.04.010 and RCW 41.26.281).[7]

¶27 In *Hansen v. City of Everett*, 93 Wn. App. 921, 926, 971 P.2d 111 (1999), this court further explained the purposes and effects of RCW 41.26.281: "By exposing an employer to liability for negligent acts toward its employees, the statute creates a strong incentive for improved safety." We also explained that RCW 41.26.281 provides a limited quid pro quo to the city in exchange for providing workers' compensation because employers are entitled to deduct workers' compensation payments from damages otherwise proved in a lawsuit against the employer. *Hansen*, 93 Wn. App. at 927.

---

[7] In *Hauber*, the court found that the county had statutory immunity against a suit brought by the estate of an emergency search and rescue volunteer and fire fighter who was killed while voluntarily attempting to save a diver. The court found that "[i]f Hauber had responded to the call as a fire fighter or pursuant to a mutual aid agreement, he may have been entitled to bring suit against the city for negligence under RCW 41.26.281 by application of RCW 38.52.080." *Hauber*, 147 Wn.2d at 661. Because the court found that Hauber was not acting as a fire fighter at the time of his death but, rather, that he responded as volunteer, the county was immune pursuant to RCW 38.52.190. *Id.*

¶28 Locke's claim against his employer in this lawsuit based on negligence is limited to the amount in "excess of damages over the amount received or receivable under [LEOFF]." *Gillis v. City of Walla Walla*, 94 Wn.2d 193, 196, 616 P.2d 625 (1980), *overruled on other grounds by Flanigan v. Dep't of Labor & Indus.*, 123 Wn.2d 418, 423, 869 P.2d 14 (1994). "The offset is applied regardless of the nature or type of disability benefits under LEOFF." *Hansen*, 93 Wn. App. at 927.

¶29 Thus, traditional subrogation or collateral source principles are not necessarily applicable. Regardless of the percentage of comparative fault the jury might assess to a claimant, the municipal employer is entitled to an offset representing 100 percent of the LEOFF benefits paid plus the present value of LEOFF benefits to be paid in the future. Similarly, the offset is against the total verdict awarded, without regard to categorizations of special or general damages. *Gillis*, 94 Wn.2d at 196. This formula treats municipal defendants more favorably than most other tortfeasors or subrogors.

¶30 To establish a claim, LEOFF members must also prove that their employers acted negligently or intentionally. Therefore, the city is protected from product liability claims vis-à-vis their employees since those are not based on negligence. *Soproni v. Polygon Apartment Partners*, 137 Wn.2d 319, 971 P.2d 500 (1999).

¶31 Thus, RCW 41.26.281 serves vital governmental purposes, satisfying the "rational basis" inquiry. It gives extra protection to fire fighters and law enforcement officers because of the hazardous nature of their occupations, thereby encouraging discipline and efficiency in the workplace. Moreover, under the statute, the governmental employer receives benefits not available to private parties subject to suits in negligence. In this context, the governmental employer occupies a middle ground between nonemployer tortfeasors and nongovernmental employer tortfeasors. The legislature had a "rational basis" for the

establishment of this middle ground. There is no constitutional infirmity.

### III. Fire Fighter Trainees May Be Members of LEOFF

¶32 The city next contends that the trial court erred in denying the city's motion for summary judgment dismissal of Locke's claim on the ground that Locke was not a LEOFF Plan 2 member at the time of his injury. On appeal, the city frames the issue thusly:

> Is a recruit in fire fighter training school who is eligible for workers' compensation benefits under RCW tit. 51 a "member" entitled to sue the City under RCW 41.26.281?

Br. of Appellants at 3. The city argues that as a matter of law, Locke, as a fire fighter trainee, could not be a member of LEOFF; that the trial court erred in denying the city's motion for summary judgment on this issue; and that the claim against the city must be dismissed. We disagree.

¶33 Locke opposed the city's motion by submitting a Department of Retirement Systems' enrollment form completed by the city, which confirms that the city enrolled Locke as a "fire fighter" in LEOFF Plan 2 with April 19, 2000 listed as his first date of employee eligibility. Locke also submitted a September 15, 2003 letter from the Seattle Fire Department which states, "Since the effective date of your appointment to Fire Fighter, April 19, 2000, you have been a LEOFF II Retirement System member."

¶34 An employer's understanding of whether its employee is a LEOFF member is a relevant and proper consideration in determining whether the employee is, in fact, a LEOFF member. *Tucker v. Dep't of Ret. Sys.*, 127 Wn. App. 700, 709, 113 P.3d 4 (2005). Locke's submissions show that the city itself considered Locke to be a LEOFF member prior to the initiation of this lawsuit. This evidence was sufficient to defeat the motion.[8]

¶35 Moreover, we find unavailing the city's argument that as a matter of statutory construction, Locke

---

[8] *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

"could not have been a [LEOFF] member." Reply Br. of Appellants at 1. Statutory construction is a question of law that we review de novo. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 627, 869 P.2d 1034 (1994); *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996). " 'The court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent.' " *Rabanco Ltd. v. King County*, 125 Wn. App. 794, 800, 106 P.3d 802 (2005) (quoting *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). " 'Absent ambiguity, a statute's meaning must be derived from the wording of the statute itself without judicial construction or interpretation.' " *Hansen*, 93 Wn. App. at 924-25 (quoting *Fray*, 134 Wn.2d at 649).

¶36 Our examination begins with RCW 41-.26.030(4)(a), which defines a "fire fighter" as:

> Any person who is serving on a full time, fully compensated basis as a member of a fire department of an employer and who is serving in a position which requires passing a civil service examination for fire fighter, and who is actively employed as such.

The classification "fire fighter" is further defined in Washington Administrative Code (WAC) 415-104-225, which sets forth the Department of Retirement Systems rules regarding LEOFF membership and gives specific guidance regarding whom the legislature intended to include. It provides:

> (2) Fire fighters. You are a fire fighter if you are employed in a uniformed fire fighter position by an employer on a full-time, fully compensated basis, and as a consequence of your employment, you have the legal authority and responsibility to direct or perform fire protection activities that are required for and directly concerned with preventing, controlling and extinguishing fires.
>
> (a) "Fire protection activities" may include incidental functions such as housekeeping, equipment maintenance, grounds

maintenance, fire safety inspections, lecturing, performing community fire drills and inspecting homes and schools for fire hazards. These activities qualify as fire protection activities only if the primary duty of your position is preventing, controlling and extinguishing fires.

. . . .

(d) You are a fire fighter if you meet the requirements of this section regardless of your rank or status as a probationary or permanent employee or your particular specialty or job title.

¶37 Training for fire suppression, as Locke was doing when he fell, is clearly a "fire protection activity" that is "required for and directly concerned with preventing, controlling and extinguishing fires." WAC 415-104-225(2). We are not persuaded by the city's attempts to argue otherwise. We also reject the city's argument that trainees such as Locke are not qualified LEOFF members because they are not fully trained fire fighters. The statute does not distinguish between levels of training.

¶38 Furthermore, the city's proposed construction of WAC 415-104-225(2)(a) is contrary to the legislative purposes of LEOFF. The LEOFF system was established to provide retirement and other benefits to those who engage in the inordinately hazardous occupations of law enforcement and fire fighting. RCW 41.26.281, the statutory provision that grants LEOFF members the right to bring negligence actions against their governmental employers, gives those employers "a strong incentive for improved safety." *Hansen*, 93 Wn. App. at 926. That purpose plainly extends to fire fighters while they are in training academies, where they must encounter dangerous conditions to prepare themselves to perform safely and effectively in actual emergencies. We reject the city's proposed narrow definition of "fire fighter" in part because it discounts the value placed by the legislature upon those who undertake the risks involved in fire fighter training. The evidence presented, the wording of the relevant administrative code provisions, the language of the relevant statute, and the legislature's purpose in enacting the statute all support denial of the city's claim of error.

*IV. Burden of Proof on Statutory Set-Off*

¶39 The city also assigns error to several of the trial court's instructions to the jury. In its first jury instruction challenge, the city focuses on jury instructions 18 and 20, which pertain to the parties' respective burdens of proof on damages. Instruction 18 informed the jury that Locke had the burden of proving damages such as pain and suffering and future economic damages. Instruction 20 stated that the city, in order to establish the amount of the offset, had the burden of proving the amount of benefits received and receivable.

¶40 The city argues that instructions 18 and 20 improperly gave inconsistent directions regarding the parties' respective burdens of proof. We disagree.

¶41 The focus of the city's argument is that instruction 20 was incorrect because Locke should have had the burden of proving the amount "received and receivable." However, in its answer to Locke's complaint the city raised the issue of its entitlement to an offset such as that reflected in instruction 20. The city's pleading was proper under CR 8(c), which states that a party shall affirmatively plead any matter constituting an avoidance or affirmative defense. CR 8(c); *Rainier Nat'l Bank v. Lewis*, 30 Wn. App. 419, 422, 635 P.2d 153 (1981). The burden of proof is thereby placed upon the party asserting the avoidance or affirmative defense. *See Gleason v. Metro. Mortgage Co.*, 15 Wn. App. 481, 551 P.2d 147 (1976) (accord and satisfaction); *Tacoma Commercial Bank v. Elmore*, 18 Wn. App. 775, 573 P.2d 798 (1977); 3A LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 8, at 138 (4th ed. 1992). Because the city's contention that it was entitled to the statutory offset was in the nature of an avoidance,[9] instruction 20 correctly stated the law.

¶42 Affirmed.

---

[9] *Shinn Irrigation Equip., Inc. v. Marchand*, 1 Wn. App. 428, 430-31, 462 P.2d 571 (1969).

¶43 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

GROSSE and BECKER, JJ., concur.

Reconsideration denied July 24, 2006.

Review granted at 158 Wn.2d 1025 (2007).