[No. 20441. Department Two. April 28, 1927.]

HARRY L. BROWN et al., Respondents, v. THE CITY OF CLE ELUM, Appellant.[1]

[1] MUNICIPAL CORPORATIONS (313)—POLICE POWER—SCOPE—PUBLIC HEALTH. A city, exercising the police power expressly conferred upon it by Rem. Comp. Stat., §§ 9127, 9473, for the protection of its water supply, will not be restrained because its property and waters involved are situated within a Federal forest reserve; in view of U. S. Code of 1926, §§ 480, 481, Title 16, providing that the jurisdiction, civil and criminal over persons within national forest reserves shall not be affected by reason of their existence, and that all waters within their boundaries may be used for domestic purposes under the laws of the state wherein the reserves are situated.

[2] INJUNCTION (33)—MUNICIPAL CORPORATIONS (51)—ENFORCEMENT OF ORDINANCE — REASONABLENESS — PROCEEDINGS TO DETERMINE VALIDITY. A city, exercising the police power expressly conferred upon it by Rem. Comp. Stat., §§ 9127, 9473, for the protection of its water supply, will not be restrained from enforcing its ordinances protecting the supply by the usual criminal proceedings, on the ground of the unreasonableness of the ordinances, at the suit of a private owner whose only property right, if any, is the right to resort to swimming, fishing and boating in a lake from which the city supply is drawn, in view of the comparatively inferior nature of such property right.

Appeal from a judgment of the superior court for Kittitas county, Moriarty, J., entered October 27, 1926, upon findings in favor of the plaintiff, in an action for an injunction, tried to the court. Reversed.

*Ralph Kauffman,* for appellant.

*Harry L. Brown, F. A. Kern,* and *E. E. Wager,* for respondents.

PARKER, J.—The plaintiff, Brown, commenced this action in the superior court for Kittitas county seeking injunctive relief restraining the defendant city

[1]Reported in 255 Pac. 961.

from enforcing or attempting to enforce its ordinance, "particularly in so far as it prohibits or attempts to prohibit swimming, fishing or boating in Lake Cle Elum," from which is taken the city's water supply. A trial in that court upon the merits resulted in a judgment awarding to Brown an injunction as prayed for by him, from which the city has appealed to this court.

Cle Elum is a duly organized municipality of this state as a city of the third class, having a population of approximately three thousand inhabitants. Lake Cle Elum is a considerable body of fresh water, about five miles long and about one mile in average width, lying in a mountain valley about six miles northwest of the city. Its outlet, which is at the southeasterly end, is the Cle Elum river, which flows southeasterly some six or seven miles into the Yakima river. In May, 1905, the United States, acting through its reclamation service, in pursuance of the acts of Congress and ch. 88 of the Laws of 1905, p. 180, of this state (Rem. Comp. Stat., §§ 7408-7415) [P. C. §§ 3376-3383], appropriated the waters of the lake and its tributary streams for a project looking to the storing and distribution of the waters of the lake and its tributary streams for irrigation of lands within the Yakima valley. In 1906, the city established a source of water supply at a point on the Cle Elum river a short distance below the outlet of the lake, and commenced to take water therefrom. The city continued to take water from that source until 1922, when it entered into a contract with the United States for the taking of water from its dam, maintained at the lake outlet; since which time, the city has taken water therefrom instead of from its formerly used source farther down the river. By that contract, the city pays to the United States

three hundred dollars per year for the privilege of so taking three cubic feet of water per second and for the use of an easement right of way for its pipe line across the land of the United States to the dam. The city claims the right to take three cubic feet of water from the river, independent of the contract, evidently by virtue of its appropriation and continuous taking for a period of some sixteen years. The contract recites this claim of the city, but does not expressly concede its validity.

During several years past, the United States has rented summer cottage sites along the southerly and easterly shore of the lake, the nearest occupied one being about one-half mile from the dam. There are about fifty of such cottages occupied in the summer seasons, and a few continue to be occupied the whole of the year. They are all located comparatively near together. The plaintiff, Brown, is such a tenant of the United States, owning and occupying one of the cottages the whole of the year. There has been considerable swimming, fishing and boating in and on the lake. All of the lands in question, that is, the whole of the drainage basin, which is some twenty-three miles long with a maximum width of seventeen miles, sending waters into the lake, belonged to the United States as the original owner, nearly all of it having been reserved from sale or other disposition and placed in the Wenatchee National Forest Reservation; the remaining small portion, bordering directly upon the lake, having been disposed of prior to the establishment of the forest reservation, has again been acquired by the United States by purchase.

In September, 1925, the city passed Ordinance No. 237, the provisions of which, so far as need be here noticed, are as follows:

"Section 1. That for the purpose of protecting the water supply furnished to the inhabitants of the City of Cle Elum from pollution, and for the preservation and protection of the purity of said water supply, the City of Cle Elum assumes jurisdiction over all the property occupied by the works, reservoirs, systems, springs, branches and pipes by means of tributaries constituting the source of supply from which said City of Cle Elum obtains its supply of water, and over all streams, creeks or tributaries constituting such sources of supply, whether the same or any part thereof, be within the corporate limits of such city, or outside thereof.

"Section 2. That the following acts shall constitute offense against the purity of such water supply; swimming, fishing, and boating in Cle Elum Lake; dumping raw sewage into any lake, river, spring, stream, creek or tributary constituting the source of supply of water of the City of Cle Elum, or camping on the shores of said streams, lakes, etc. No dwelling shall be constructed or maintained on the water shed, unless said dwelling is provided with a sanitary toilet so designed and so kept that the contents of said toilet cannot drain on the surface of the ground or reach the water through the ground.

"Section 3. That every person who shall deposit or cause to be deposited in any spring, stream, river or lake constituting the source of supply from which said City of Cle Elum obtains its supply of water, any matter or thing whatever, dangerous or deleterious to health, or any matter or thing which may or could pollute the waters of such spring, stream, river, lake or water system, shall be deemed guilty of violation of this ordinance."

The ordinance further provides for punishment for violation of its provisions, by fine or imprisonment or both. In the passage of this ordinance, the city assumed to exercise police power which is, in terms, given to it by the following sections of Remington's Compiled

20—143 WASH.

Statutes (Rem. Comp. Stat., §§ 9127, 9473) [P. C. §§ 797, 1254], relating to the protection of sources of water supplies of cities and towns:

"§ 9127. The city council of such city [city of third class] shall have power— . . .

. "To purify and prevent the pollution of streams of water, lakes or other sources of supply, and for this purpose shall have jurisdiction over all streams, lakes or other sources of supply, both within and without the city limits. Such city shall have power to provide by ordinance and to enforce such punishment or penalty as the city council may deem proper for the offense of polluting or in any manner obstructing or interfering with the water supply of such city or source thereof . . ."

"§ 9473. For the purpose of protecting the water furnished to the inhabitants of towns and cities within this state from pollution, the said towns and cities are hereby given jurisdiction over all property occupied by the works, reservoirs, systems, springs, branches and pipes, by means of which, and of all the lakes, rivers, springs, streams, creeks or tributaries constituting the sources of supply from which such cities or towns or the companies or individuals furnishing water to the inhabitants of such cities or towns obtain their supply of water, or store or conduct the same, and over all property acquired for any of the foregoing works or purposes or for the preservation and protection of the purity of the water supply, and over all property within the areas draining into the lakes, rivers, springs, streams, creeks or tributaries constituting such sources of supply whether the same, or any thereof, be within the corporate limits of such town or city or outside thereof; and authority is hereby conferred upon such towns and cities to prescribe by ordinance what acts shall constitute offenses against the purity of such water supply and the punishment or penalties therefor and to enforce said ordinances; . . ."

The ordinance being enacted in pursuance of the police power expressly granted to the city by the terms

of the statutes above quoted, we must start with the presumption that its enactment is a valid exercise of that power.

[1] It is first contended in behalf of plaintiff that the ordinance is invalid because its enactment is an attempted exercise of the police power of the city over lands and waters which are the property of the United States. The argument seems to be that, because the lands in question are the property of the United States and in its forest reservation, and because of its water appropriation, the city cannot lawfully exercise over them the police power it has assumed to do. We cannot agree with this view of the law. The forest reservations are not like military reservations over which the United States usually reserves governmental jurisdiction. Our forest reservations are generally but withdrawals by the United States, for purposes of conservation, of certain designated public lands from sale or disposition into private ownership, certain acts of Congress making regulations with reference to their use; the United States exercising dominion over such lands as owner almost wholly in its proprietary, rather than in its governmental, capacity. In §§ 480 and 481, Title 16, of United States Code of 1926, relating to national forests, we read:

"480. Civil and criminal jurisdiction.—The jurisdiction, both civil and criminal over persons within national forests shall not be affected or changed by reason of their existence, except so far as the punishment of offenses against the United States therein is concerned; the intent and meaning of this provision being that the State wherein any such national forest is situated shall not, by reason of the establishment thereof, lose its jurisdiction, nor the inhabitants thereof their rights and privileges as citizens, or be absolved from their duties as citizens of the State. (June 4,

1897, c. 2, § 1, 30 Stat. 36; Mar. 1, 1911, c. 186, § 12, 36 Stat. 963.)

"481. Use of waters.—All waters within the boundaries of national forests may be used for domestic, mining, milling, or irrigation purposes, under the laws of the State wherein such national forests are situated, or under the laws of the United States and the rules and regulations established thereunder."

We think this language plainly evidences a legislative intent on the part of Congress to leave to the states full freedom in the exercise of their ordinary police power over the territory of forest reservations as well as elsewhere within the territorial limits of the respective states, in any event in so far as the exercise of the police power has to do with the restraining of acts of private citizens, looking to the preservation of public health, as well as the preservation of peace and good order in other respects. We are of the opinion, therefore, that the plaintiff, being a private citizen seeking only the exercise and protection of what he conceives to be his private property rights, is in no position to challenge the police power of the state here granted to the city, upon the ground that the city has no jurisdiction to exercise that power over these lands and waters merely because title thereto is in the United States.

[2] It is further contended that the ordinance is void because of its unreasonableness. We do not see our way clear to so decide in this case, in view of the circumstances here appearing. We are in this case only called upon to determine the reasonableness or unreasonableness of the ordinance in its particular prohibitions of respondent's swimming, fishing and boating in and upon the lake. In view of the comparatively inferior nature of the property right in respondent, if he have any property right, to do any of the

particular prohibited acts in question, the only ones which he claims that he is unlawfully deprived of the right to do, we think he is not entitled to injunctive relief looking to the preventing of the city's attempting to enforce its ordinance by the usual criminal proceedings. We have found but little aid in the authorities, though *Salt Lake City v. Young*, 45 Utah 349, 145 Pac. 1047, decided by that court upon an exhaustive and able consideration of a somewhat similar problem, lends support to our conclusion here reached.

There looms in the horizon of this controversy a question of far-reaching importance; that is, as to whether or not the legislature can constitutionally delegate to a city authority to exercise police power beyond its territorial limits and outside the boundaries of property it may own beyond its territorial limits, by the passing and enforcing of ordinances assuming to regulate the conduct of citizens beyond such limits and boundaries. No argument has been presented to us here touching that question, and we purposely refrain from expressing any views thereon. The city's power is here challenged only upon the two grounds we have noticed, (1) the United States ownership of the lands and waters, and (2) the reasonableness of the ordinance. No other question is here decided.

The judgment is reversed.

MACKINTOSH, C. J., FRENCH, ASKREN, and TOLMAN, JJ., concur.