# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SKYCORP LTD,<br><br>            Appellant,<br><br>   v.<br><br>KING COUNTY, a municipal subdivision of the State of Washington,<br><br>            Respondent. | No. 57452-7-II<br><br><br>PUBLISHED OPINION |

GLASGOW, C.J.—The King County Code (KCC) 10.30.020 requires that anyone who generates, handles, or collects mixed or nonrecyclable construction and demolition waste within King County must dispose of such waste in county designated facilities. King County (the County) has designated facilities in King, Pierce, and Snohomish counties for this purpose. In violation of the code, SkyCorp disposed of mixed construction and demolition waste that was generated and then collected within King County at a licensed, but not designated, facility in Yakima County. In response to this violation of KCC 10.30.020, the County issued a citation and imposed a one hundred dollar fine.

SkyCorp does not dispute that it violated the code. Rather, SkyCorp sued the County arguing that KCC 10.30.020, as applied in this case, is an unconstitutional exercise of the County's police power beyond its jurisdictional borders. SkyCorp also asserts that the code is an unconstitutional restriction on SkyCorp's purported fundamental right to freely dispose of their

property under the privileges and immunities clause of the Washington Constitution. The superior court granted summary judgment in favor of the County and dismissed the case. SkyCorp appeals.

On appeal, SkyCorp argues that the County's application of KCC 10.30.020 is a violation of two provisions of the Washington Constitution: article XI, section 11, addressing local governments' police power to impose local sanitary regulations, and article I, section 12, the privileges and immunities clause. Furthermore, SkyCorp argues that the trial court improperly admitted into the record, and then relied on, a declaration by the County's construction and demolition program manager in reaching its summary judgment decision.

First, we affirm the trial court's decision to grant summary judgment to the County as to SkyCorp's article XI, section 11 claim. The code is local in nature because it regulates the disposal of waste generated and collected *within* King County. The code is not contrary to state statutes, and the code is a reasonable exercise of the County's police power to regulate sanitation—a power expressly granted to local governments in the Washington Constitution. Thus, the County's enforcement action against SkyCorp did not violate article XI, section 11 in this case.

Second, we affirm the trial court's decision to grant summary judgment to the County in regard to SkyCorp's privileges and immunities claim. KCC 10.30.020, as applied to SkyCorp, does not violate the privileges and immunities clause of the Washington Constitution because SkyCorp does not possess a fundamental right to dispose of waste as it desires without county regulation.

Third, the trial court did not abuse its discretion when it denied SkyCorp's oral motion to strike the county program manager's declaration. Moreover, any error was harmless because we need not rely on the declaration to resolve this case.

FACTS

I. FACTUAL BACKGROUND

King County implemented a Comprehensive Solid Waste Management Plan through Title 10 of the King County Code. As part of this plan, the County sought to ensure the proper disposal of nonrecyclable construction and demolition waste, to increase the amount of construction and demolition waste that is recycled, to conserve energy and natural resources, to protect the environment, and to preserve space at existing landfills. *See* KCC 10.08.080; KCC 10.30.010; KCC 10.14.020. To achieve these objectives, the County adopted a solid waste disposal code that regulates "all solid waste either generated, collected[,] or disposed, in unincorporated King County." KCC 10.08.020(A). The County's code makes it unlawful to deliver mixed and nonrecyclable construction and demolition waste to non-designated facilities. KCC 10.08.020(B)–(D).

The County's Comprehensive Solid Waste Management Plan describes a process for designating facilities to receive construction and demolition waste generated or collected in King County. DEP'T OF NAT. RES. & PARKS, KING COUNTY, 2019 COMPREHENSIVE SOLID WASTE MANAGEMENT PLAN 4-36 to 4-37 (Nov. 2019) (CSWMP).[1] The implementing code requires that "[a]ll generators, handlers and collectors of mixed [construction and demolition] waste or nonrecyclable [construction and demolition] waste generated within the county's jurisdiction shall deliver, or ensure delivery to, a designated [construction and demolition waste] receiving facility" specified by the County. KCC 10.30.020(A)(1). These requirements apply only to mixed and

---

[1] https://your.kingcounty.gov/dnrp/library/solid-waste/about/planning/2019-comp-plan.pdf [https://perma.cc/482A-W89R]

nonrecyclable construction and demolition waste whereas recyclable construction and demolition materials may be disposed of at any recycling facility. KCC 10.30.020(C).

The County has designated eight disposal sites that are within its territorial borders, as well as six facilities in adjacent Snohomish County and Pierce County. CSWMP, *supra*, at 4-36 to 4-37 (listing designated disposal facilities as of July, 2018). The County argues that the designated facilities are specifically designed to handle mixed and nonrecyclable construction and demolition waste.

SkyCorp does not dispute that it collected construction and demolition waste from sites in King County and disposed of the waste at a non-designated facility in Yakima County in violation of KCC 10.30.020. As a result, the County issued SkyCorp a citation and fine in the amount of one hundred dollars.

## II. PROCEDURAL HISTORY

In response to this citation, SkyCorp sued the County in federal district court, asserting both federal and state law claims. SkyCorp asserted that the County's solid waste disposal code violated the commerce clause and due process clause of the United States Constitution as applied in this case. The U.S. District Court for the Western District of Washington dismissed the federal claims with prejudice. The Ninth Circuit affirmed. *SkyCorp, Ltd. v. King County*, 859 F. App'x 780 (9th Cir. 2021).

The U.S. District Court dismissed SkyCorp's state law claims without prejudice and SkyCorp subsequently sued the County in superior court. SkyCorp argued that the County's citation is an unconstitutional application of King County's police power under article XI, section 11 of the Washington Constitution, which expressly grants municipal governments the police power to regulate sanitation so long as the regulations are local, reasonable, and do not conflict

with state law. SkyCorp also argued that KCC 10.30.020 violates article I, section 12, the privileges and immunities clause of the Washington Constitution, by "den[ying] SkyCorp the privilege of disposing of its property at any location of its choice." Clerk's Papers (CP) at 7. In making this claim, SkyCorp argued that it has a constitutionally protected property interest in the construction and demolition waste that it is disposing of.

The County presented several reasons justifying KCC 10.30.020 and its application to SkyCorp's conduct. The County asserted that the code maximizes the amount of construction and demolition waste that is recycled and ensures the safe disposal of waste that is nonrecyclable. In doing so, the County argued, the code "preserves landfill capacity, whether it's the landfills in King County or the regional landfills themselves. It creates jobs. It saves energy by reducing the amount of raw materials that are needed to create new products." Verbatim Rep. of Proc. (VRP) at 10. Furthermore, the County asserted that the code "generates revenue for monitoring and enforcement" and "protects King County and King County residents against hazardous waste." *Id.* Benefits to King County and its residents are not only realized when in-county facilities are designated to receive King County's construction and demolition waste. Rather, the County argued that revenue generated from any designated facility goes directly into funding the County's solid waste disposal plan and will ensure that construction and demolition waste generated within King County is disposed of in compliance with the County's strict environmental standards.

During the hearing on the County's motion for summary judgment, SkyCorp's counsel raised an oral motion to strike the declaration of the County's construction and demolition manager. The court declined to strike the declaration from the record, instead promising to "take [the oral motion to strike] into consideration in terms of weight given." VRP at 14. The superior court granted the County's motion for summary judgment. The summary judgment order lists the

declaration of the County's construction and demolition manager as one of the documents that the court considered. SkyCorp appeals.

ANALYSIS

I. STANDARD OF REVIEW

We review a trial court's decision to grant summary judgment de novo. *Wolf v. State*, 2 Wn.3d 93, 102, 534 P.3d 822 (2023). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). We engage in the same inquiry as the trial court, treating all facts and reasonable inferences in the light most favorable to the nonmoving party. *Mason v. Mason*, 19 Wn. App. 2d 803, 819, 497 P.3d 431 (2021). Summary judgment is appropriate when the plaintiff has failed to make a showing sufficient to establish the existence of an element essential to that party's case. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989).

The constitutionality of an ordinance is also a question of law that we review de novo. *City of Spokane v. Neff*, 152 Wn.2d 85, 88, 93 P.3d 158 (2004). We interpret ordinances using the same rules of construction we employ for statutes. *City of Spokane v. Douglass*, 115 Wn.2d 171, 177, 795 P.2d 693 (1990). We presume an ordinance is constitutional, and the party challenging it must prove that "the ordinance is unconstitutional beyond a reasonable doubt." *Id.*

II. SKYCORP'S CHALLENGE TO KCC 10.30.020 UNDER ARTICLE XI, SECTION 11

A.      Municipal Regulation of Solid Waste

1.      Solid waste regulation under the Washington Constitution and Washington statutes

Article XI, section 11 of the Washington Constitution provides that "[a]ny county, city, town or township may make and enforce within its limits all such local police, *sanitary* and other regulations as are not in conflict with general laws." (Emphasis added.) This is a direct grant of

police power to counties, and within a county's jurisdiction, this power is as extensive as the legislature's police power. *Petstel, Inc. v. King County*, 77 Wn.2d 144, 159, 459 P.2d 937 (1969). To that end, an ordinance violates article XI, section 11 only if (1) the subject matter of the ordinance is not local, (2) the ordinance directly and irreconcilably conflicts with state law, or (3) the ordinance is an unreasonable exercise of the County's police power. *Weden v. San Juan County*, 135 Wn.2d 678, 692, 958 P.2d 273 (1998), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019). Determinations of whether an ordinance is local, conflicts with state law, or is a reasonable exercise of municipal authority under article XI, section 11, are purely questions of law subject to de novo review. *Id.* at 693

In addition to the grant of power to cities and counties under article XI, section 11, the legislature has mandated that all counties regulate solid waste, declaring that "[i]t is the responsibility of county and city governments to assume primary responsibility for solid waste management and to develop and implement aggressive and effective waste reduction and source separation strategies." RCW 70A.205.005(6)(c). The legislature has also recognized counties have broad authority to regulate the disposal of solid waste, specifically:

> The legislative authority of a county may by ordinance provide for the establishment of a system or systems of solid waste handling for all unincorporated areas of the county or for portions thereof. *A county may designate a disposal site or sites for all solid waste collected in the unincorporated areas pursuant to the provisions of a comprehensive solid waste plan adopted pursuant to chapter 70A.205 RCW.* However[,] for any solid waste collected by a private hauler operating under a certificate granted by the Washington utilities and transportation commission under the provisions of chapter 81.77 RCW and which certificate is for collection in a geographic area lying in more than one county, such designation of disposal sites shall be pursuant to an interlocal agreement between the involved counties.

RCW 36.58.040(1) (emphasis added).

The County derives its authority to designate disposal sites for mixed and nonrecyclable construction and demolition waste generated in the unincorporated areas of King County from these provisions of state law.

In *Rabanco Ltd. v. King County*, Division One explained that "[t]he first part of RCW 36.58.040 grants King County authority to designate a final disposal site in King County for waste collected in unincorporated King County." 125 Wn. App. 794, 803, 106 P.3d 802 (2005). The court in *Rabanco* also concluded that "the statute prohibits . . . collecting waste in one county and taking it to another county without an agreement between those counties." *Id.* at 806. The statute "was intended to preserve a county's control over disposal of waste collected within the county to protect a county's substantial investment in its solid waste management system." *Id.*

The *Rabanco* court also examined the legislative history of RCW 36.58.040. During the Senate floor debate, prior to the passage of the statute, the bill's sponsor described its impetus:

> "At present when you have a private collection franchise if you want to pick up the garbage in the unincorporated part of the county and you want to truck it down to . . . Cowlitz County and dump it there, you can do so. This bill would prohibit that. If a private collection group wants to take its garbage to another county[,] then it would be up to an inter-local cooperation agreement between the two counties to work this out so that it is very clear as to who is receiving the ultimate garbage disposal.
>
> "This also assures King County or any county that it is going to continue to have in the future quite a garbage disposal business to justify that huge capital investment."

*Rabanco,* 125 Wn. App. at 805. (first alteration in original) (quoting 3 SENATE JOURNAL, 44th Leg., 2d Ex. Sess., at 514 (Wash. 1975-76)).

Thus, the legislature intended that the authorizing statute would provide counties with the authority to prevent solid waste collected within its borders from being transported to another

county absent an inter-local cooperation agreement or a designation by the originating county. *Id.* at 806. The *Rabanco* court did not address article XI, section 11, however.

Finally, chapter 70A.205 RCW established statewide restrictions on solid waste disposal and required permits to operate a disposal facility. RCW 70A.205.195(1) provides that "it is unlawful for any person to dump or deposit or permit the dumping or depositing of any solid waste onto or under the surface of the ground or into the waters of this state." The statute provides an exception for dumping "at a solid waste disposal site for which there is a valid permit, after the adoption of regulations or ordinances by any county, city, or jurisdictional board of health providing for the issuance of permits as provided in RCW 70A.205.100." *Id.*

RCW 70A.205.100 governs permitting by requiring each county to enact "ordinances governing solid waste handling implementing the comprehensive solid waste management plan covering storage, collection, transportation, treatment, utilization, processing and final disposal including but not limited to the issuance of permits and the establishment of minimum levels and types of service for any aspect of solid waste handling." The legislature expressly required that these codes "assure that solid waste storage and disposal facilities are located, maintained, and operated in a manner so as properly to protect the public health, prevent air and water pollution, are consistent with the priorities established in RCW 70A.205.005, and avoid the creation of nuisances." RCW 70A.205.100. The statute permits counties to implement regulations or codes that are "more stringent than the minimum functional standards adopted by the department." *Id.*

2.      King County's solid waste disposal code

Under the authority of state law described above and to comply with the statutory mandate to control the flow of solid waste, the County enacted KCC 10.30.020. The code provides that "[a]ll generators, handlers and collectors of mixed [construction and demolition] waste or

nonrecyclable [construction and demolition] waste generated within the county's jurisdiction shall deliver, or ensure delivery to, a designated [construction and demolition waste] receiving facility." KCC 10.30.020(A)(1). To enforce this requirement, the County also provided that "[i]t is unlawful for any person to dispose of county solid waste except at solid waste facilities and in a manner authorized under this title." KCC 10.08.020(B).

The County has designated eight disposal sites that are within its territorial borders, as well as six facilities in adjacent Snohomish and Pierce Counties. CSWMP, *supra*, at 4-36 to 4-37.

B.     SkyCorp's Article XI, Section 11 Claim

Under article XI, section 11, SkyCorp challenges the County's application of KCC 10.30.020 to SkyCorp's disposal of mixed and nonrecyclable construction and demolition waste at a non-designated facility in Yakima. SkyCorp argues that to be valid under article XI, section 11, a code and its enforcement must be local, but that the County's citation constitutes an extraterritorial application of the County's police power because the County is regulating the disposal of solid waste beyond its borders. SkyCorp argues that KCC 10.30.020 conflicts with RCW 70A.205.195, which authorizes entities like SkyCorp to dispose of solid waste at any waste disposal site that has a valid permit. Finally, SkyCorp argues that the application of KCC 10.30.020 is not a reasonable exercise of municipal police power under article XI, section 11 because the code does not promote the health, safety, peace, education, or welfare of the people of King County.

The County responds that KCC 10.30.020 only regulates the flow of solid waste that originates within its borders, and thus, the code is regulating local subject matter, even if it has some incidental extraterritorial reach. The County further argues that RCW 70A.205.195 does not create the affirmative right that SkyCorp asserts to dispose of this waste without local interference,

and thus, there is no conflict with state law. Finally, the County argues that SkyCorp has failed to demonstrate that KCC 10.30.020 is a "'clearly unreasonable, arbitrary or capricious'" exercise of King County's police power. Br. of Resp't at 36 (quoting *Weden*, 135 Wn.2d at 700). We agree with the County.

      1.      <u>As applied challenge and RCW 36.58.040(1)</u>

As an initial matter, SkyCorp characterizes its challenge to KCC 10.30.020 as a narrow, as applied challenge to King County's application of the code to prohibit SkyCorp's disposal of construction and demolition waste at a non-designated facility outside of King County's borders. Nevertheless, if successful, SkyCorp's proposed analysis would undermine the constitutionality of the statutory authority granted in RCW 36.58.040(1).

The legislature has granted counties broad authority to "designate a disposal site or sites for all solid waste collected in the unincorporated areas pursuant to the provisions of a comprehensive solid waste plan adopted pursuant to chapter 70A.205 RCW." RCW 36.58.040(1). In addition, RCW 36.58.040(1) expressly contemplates that counties will designate some disposal sites that are outside of county borders, requiring that these approvals be supported by an interlocal agreement. Thus, the legislature restricted out-of-county disposal by making an interlocal agreement a prerequisite to designation of an out-of-county disposal site. The legislature put no other restrictions on county designations of approved disposal sites. The legislature certainly did not say in RCW 36.58.040(1) that the counties are required to designate *all* state-licensed disposal facilities.

SkyCorp essentially argues that the County cannot constitutionally exercise the broad authority granted in RCW 36.58.040(1) to choose which facilities will be authorized to receive the County's construction and demolition waste. To the extent SkyCorp asks us to adopt an analysis

11

that renders RCW 36.58.040(1) unconstitutional, we must keep in mind the strong presumption of constitutionality for legislative enactments. *State v. Batson*, 196 Wn.2d 670, 674, 478 P.3d 75 (2020). As explained below, we decline to adopt SkyCorp's reasoning and call the constitutionality of RCW 36.58.040(1) into question.

2.      <u>Local nature of the code</u>

SkyCorp contends the "critical legal question" is "whether King County can regulate these out of jurisdiction transactions simply because the waste was at one time within King County borders." Appellant's Opening Br. at 16. In this sense, SkyCorp asserts that King County "regulate[s] solid waste disposal in other counties." *Id.* at 18. SkyCorp argues that King County's application of its code "does not merely have incidental *effects*" outside the County, but it "completely prohibits a transaction that occurs entirely outside of King County." *Id.* at 19. Thus, SkyCorp asserts that KCC 10.30.020 is nonlocal.

The County responds by explaining that the code only governs "solid waste generated within the County's local jurisdiction." Br. of Resp't at 24. The County argues that the primary purpose of the code is to regulate the flow of waste that is generated within King County and is not to exert regulatory authority over extraterritorial disposal sites. Rather, the County is simply exercising its legislatively delegated authority to control the flow of solid waste that is generated within their borders. Thus, prohibiting the disposal of waste at some out-of-county locations is merely an incidental effect stemming from the primary focus of the code—regulating the flow of solid waste generated within King County. We agree with the County.

KCC 10.30.020 only requires that construction and demolition waste *generated within King County* be delivered to a county-designated disposal site. When an entity like SkyCorp collects construction and demolition waste that originates inside King County, the entity must then

determine where to dispose of that waste. The County's code requires the entity to take the waste from its point of origin in King County to a designated disposal site, all of which are located in King County or in adjacent counties. Thus, the code necessarily prohibits an entity from disposing of the waste at any other place and in any other manner, including at non-designated facilities in more distant counties. The fact that this regulation has the effect of prohibiting disposal at non-designated sites in more distant counties does not render it nonlocal. The core purpose and effect of the regulation are to ensure the efficient and proper disposal of waste that originated in King County from the moment it is generated or collected within the county.

In regulating the proper disposal of construction and demolition waste, the County's stated purposes were to ensure the proper disposal of nonrecyclable construction and demolition waste, increase the amount of construction and demolition waste that is recycled, conserve energy and natural resources, protect the environment, and preserve space at existing landfills. *See* KCC 10.08.080; KCC 10.30.010; KCC 10.14.020. The County has explained that KCC 10.30.020 maximizes the amount of construction and demolition waste that is recycled and ensures the safe disposal of waste that is nonrecyclable by enabling nonrecyclable waste to be separated from recyclable waste in specially designated facilities. The code "preserves landfill capacity, whether it's the landfills in King County or the regional landfills themselves." VRP at 10. KCC 10.30.020 saves energy and slows climate change by reducing the amount of raw materials that are needed to create new products. It also necessarily prevents needless long-distance hauling of the waste.

Significantly, there is economic benefit to the County because the code's requirement creates jobs both in King County and in adjacent counties where King County residents can work. In addition, the Comprehensive Solid Waste Management Plan requires designated facilities to pay fees to the County, so the code "generates revenue for monitoring and enforcement," and

13

"protects King County and King County residents against hazardous waste." *Id.* Benefits to King County and its residents are not only realized when in-county facilities are designated to receive construction and demolition waste. Rather, the County argues that revenue generated from any designated facility goes directly into funding King County's solid waste disposal plan and will ensure that construction and demolition waste generated within King County continues to be disposed of in compliance with the County's environmental standards.[2]

SkyCorp rightly identifies *Brown v. City of Cle Elum*, as a relevant case, but it misapplies *Brown* to the facts here. *Brown* involved a City of Cle Elum code through which the City sought to assume jurisdiction over all water that fed into its water supply. The code prohibited and punished activities including, but not limited to, swimming, fishing, and boating in Cle Elum Lake, which was situated entirely outside of the city. 143 Wash. 606, 609, 255 P. 961, *vacated on reh'g*, 145 Wash. 588, 261 P. 112 (1927). In the context of these facts, the Washington Supreme Court stated that the grant of police power to various municipalities in article XI, section 11 "is strictly limited to the exercise of that power *within the limits* of such municipalities." *Brown*, 145 Wash. at 589. The court held that Cle Elum's code was an unconstitutional extraterritorial exercise of its police power under article XI, section 11. *Id.* at 590-91.

---

[2] At oral argument, SkyCorp stated that a code that required the disposal of construction and demolition waste only at sites entirely within King County would likely not violate article XI, section 11 because such a regulation would be entirely local. Wash. Court of Appeals oral arg., *SkyCorp Ltd. v. King County*, No. 57452-7-II (Sept. 11, 2023) at 30 min., 14 sec., to 31 min., 20 sec., video recording by TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-2-court-of-appeals-2023091062/. This concession undermines SkyCorp's argument, because a code that required disposal *only* within King County's borders would just as effectively prohibit disposal at facilities in Yakima County, as the one King County adopted. If SkyCorp's identified fault in the County's code is its prohibition against disposal in a remote county, and that is what makes the code nonlocal, then the result should not depend on whether the County allows this type of waste to be disposed of in some facilities in adjacent counties.

In more modern cases, the Washington Supreme Court has recognized that codes exercising a county's police power can have effects outside of the county without invalidating the code. In *Weden*, the County sought to prohibit the use of private watercraft on all marine waters and one lake within the county with limited exceptions. 135 Wn.2d at 684-85. The court held that the fact nonresidents traveling to San Juan County would be impacted by this prohibition and had to comply, did not "invalidate the law or make it 'not local' for purposes of the police power." *Id.* at 706. "[M]unicipal legislation will not be found to violate the police power if its effect outside the county is only incidental." *Id.* at 705. The *Weden* court thus further developed the analysis, making it clear that our focus in evaluating whether a code is local must be directed at whether "the subject matter" is local, not whether the effects are confined within the county's borders. *Id.* at 692.

In *Petstel*, the Washington Supreme Court addressed whether the County's imposition of maximum rates to be charged by employment agencies operating within the county had a sufficient impact outside of the county to render the code unconstitutional. 77 Wn.2d at 159. The court concluded that "[w]hile it is true that county regulation of [wage] rates may result in dissimilar market conditions throughout the state, the same effect could also result from various county licensing and standards regulations . . . [and] is not sufficient to render these regulations nonlocal in character." *Id.*

Finally, in *Wilson,* the Washington Supreme Court considered the authority of the City of Mountlake Terrace to fluoridate its water given that some of the fluoridated water would flow to residents living outside of the city's limits. *Wilson v. City of Mountlake Terrace*, 69 Wn.2d 148, 150-51, 417 P.2d 632 (1966). The challengers of the code relied heavily on *Brown* for the proposition that "a city cannot exercise its police power outside its boundaries." *Id.* at 152. The

court rejected this argument, finding that while the "appellant is correct in his abstract statement of the law," the City was not in fact proposing to exercise its police power outside the city limits. *Id.* at 152-53. Rather, the City was exercising its police power within city limits for the purpose of "furnish[ing] fluoridated water to its own inhabitants," and the subsequent flow of fluoridated water to the non-resident appellant was "the incidental, although inevitable, result of the city's exercise of its police power in this respect." *Id.* at 153. The literal downstream effect outside of the city was not enough to render the code nonlocal. Importantly, the court in *Wilson* focused its analysis on the purpose of the code to determine whether its extraterritorial impact was merely a constitutional incidental effect.

Here, KCC 10.30.020 controls the flow of all mixed and nonrecyclable construction and demolition waste that is generated or collected within unincorporated King County. An important component of a code is designating where such waste may be disposed. To that end, the code makes it "unlawful for any person to deliver any county solid waste to a place other than a disposal facility designated by the county to receive the particular waste." KCC 10.08.020(C).

The County's authority to govern local sanitation arises from the plain language of article XI, section 11. The County draws its specific authority for this code from RCW 36.58.040, which provides clear authority to counties for the purpose of designating disposal sites for all solid waste collected in their unincorporated areas. As the *Rabanco* court explained, this statute's legislative history demonstrates that the legislature intended RCW 36.58.040 to ensure counties are able to control, by interlocal agreement, the disposal of solid waste generated within their borders— including when and to where that waste is transported out of the county. *Rabanco*, 125 Wn. App. at 806.

Incidental effects that stem from a regulation that directly regulates activities primarily within the borders of the county do not violate article XI, section 11. To varying degrees, *Weden*, *Petstel*, and *Wilson* are examples of incidental effects stemming from a locally focused exercise of police power. Conversely, *Brown* is a clear example of an exercise of police power with a primarily extraterritorial focus.

We acknowledge that this case falls somewhere in between *Brown'*s attempt to regulate activity entirely outside of the municipality's borders and *Weden's* and *Petstel*'s regulation of activities entirely within the municipalities' borders. This case is more like *Wilson,* where a regulatory scheme directly addresses activity within the municipality's boarders (here, regulation of where construction and demolition material must go after it is generated or collected within King County) with downstream effects outside of the county.

The *primary* purpose of KCC 10.30.020 is to regulate the flow of mixed and nonrecyclable construction and demolition waste that is generated within King County. The code achieves this purpose by designating lawful waste disposal sites. The County has designated several disposal sites—with some located within King County and some located in adjacent Snohomish and Pierce Counties. CSWMP, *supra*, at 4-36 to 4-37. Thus, the subject matter of the code is mixed and nonrecyclable construction and demolition waste that is generated within King County and is not, as SkyCorp argues, the prohibition of a transaction occurring entirely outside of King County.

The *Wilson* court recognized that Mountlake Terrace was acting within its constitutional limitations under article XI, section 11 because the primary focus of its exercise of police power was the fluoridation of water treated within city limits, despite the fact that the water inevitably flowed to out-of-county residents. Similarly, the County's prohibition on disposal at a non-designated, out-of-county facility is an inevitable, but incidental product of the County's

application of its police power to control the flow of mixed and nonrecyclable construction and demolition waste generated within King County. To the extent that this code has the downstream effect of prohibiting disposal at non-designated facilities outside of King County, the scope of that incidental effect is minimal when compared to the code's primary purpose. Mixed and nonrecyclable construction and demolition waste that SkyCorp collects *inside* King County must be disposed of at a King County approved facility. The County does not seek to control the flow of waste that is generated or collected elsewhere and is not regulating or permitting the facility in Yakima County. Rather, the County is designating permissible disposal locations for mixed and nonrecyclable construction and demolition waste generated within the county as part of its constitutionally granted power to govern local sanitation and its legislatively granted specific control over the flow of solid waste that is generated within its borders.

SkyCorp is correct that "[b]oundaries mean something." Appellant's Opening Br. at 60. Here, the County does not regulate any facility beyond its borders absent an interlocal agreement, nor does it control the flow of waste that is generated outside of county boundaries. On balance, we conclude that out-of-county downstream effects are incidental to the primary regulatory effect—managing the flow of waste by designating disposal sites for mixed and nonrecyclable construction and demolition waste that is generated within King County. SkyCorp failed to meet its heavy burden of overcoming the presumption of constitutionality by showing the King County code is nonlocal beyond a reasonable doubt.

3. Conflict with state law

KCC 10.30.020 makes it unlawful to dispose of mixed or nonrecyclable construction and demolition waste except at county-approved facilities. SkyCorp argues that this code directly and irreconcilably conflicts with RCW 70A.205.195, which makes it unlawful to dispose of solid waste

18

except at locally permitted sites. SkyCorp's argument hinges on us interpreting RCW 70A.205.195 to create an affirmative right—the right to dispose of waste at any facility that is locally permitted, including the permitted disposal site in Yakima County. SkyCorp points out that "[n]othing in [RCW 70A.205.195] suggests that King County may prohibit the use of locally licensed disposal facilities . . . by anyone who happens to have waste that originated in King County." Appellant's Opening Br. at 24. SkyCorp concludes that RCW 70A.205.195 provides that it is legal to deposit solid waste at a site where there is a valid permit and that KCC 10.30.020, by reducing the number of lawful disposal sites for mixed and nonrecyclable construction and demolition waste, conflicts with this grant of permission to dispose of this waste under state law. We disagree.

A local code violates article XI, section 11 if it directly and irreconcilably conflicts with a state statute. *HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 482, 61 P.3d 1141 (2003); *Heinsma v. City of Vancouver*, 144 Wn.2d 556, 564, 29 P.3d 709 (2001). If the state statute and local code can be harmonized, there is no conflict for the purposes of article XI, section 11. *Heinsma*, 144 Wn.2d at 564. A direct and irreconcilable conflict occurs when a code permits what state law forbids or forbids what state law permits. *Lawson v. City of Pasco*, 168 Wn.2d 675, 682, 230 P.3d 1038 (2010).

When interpreting a statute, "the court must assume that the Legislature does not engage in meaningless acts." *JJR Inc. v. City of Seattle*, 126 Wn.2d 1, 10, 891 P.2d 720 (1995). Furthermore, simply because an activity can be licensed under state law does not mean that local governments are required to allow such activity. *Emerald Enters., LLC v. Clark County*, 2 Wn. App. 2d 794, 805, 413 P.3d 92 (2018) (concluding that just because Washington's Uniform Controlled Substances Act, chapter 69.50 RCW permitted the licensing of marijuana facilities, it did not also "grant retailers an affirmative right to sell marijuana").

Similarly, in *Weden,* the court analyzed whether a statute that created a title registration system for boats also entitled registered boat owners to operate their boats anywhere in the state, thereby preempting San Juan County's prohibition on personal watercraft in certain marine waters and one lake. 135 Wn.2d at 694-95. The court held that no unconditional right to operate a boat was granted by obtaining the registration. *Id.* at 695. "Statutes often impose preconditions which do not grant unrestricted permission to participate in an activity." *Id.*

Here, RCW 70A.205.195 provides "it is unlawful for any person to dump or deposit or permit the dumping or depositing of any solid waste onto or under the surface of the ground or into the waters of this state" except "at a solid waste disposal site for which there is a valid permit" or as otherwise provided in that section. RCW 70A.205.195(1). Under *Emerald Enterprises* and *Weden,* just because the state *permits* an activity to be licensed, does not mean such an activity *must* be allowed under local law. RCW 70A.205.195 does not create an affirmative right to dispose of solid waste at any locally licensed facility. As a result, the King County code can be harmonized with RCW 70A.205.195.

Moreover, RCW 36.58.040 simultaneously authorizes counties to designate disposal sites, which would be entirely superfluous if *all* locally permitted disposal sites *had* to be designated. To read RCW 70A.205.195 as creating an affirmative right to dispose of waste at any licensed facility would render the power granted by RCW 36.58.040 meaningless because counties would have no choice but to designate all locally licensed disposal facilities. We presume the legislature does not engage in useless or meaningless acts. *JJR*, 126 Wn.2d at 10.

Finally, KCC 10.30.020 does not impede the ability of Yakima County to regulate and license its own solid waste facilities. Rather, KCC 10.30.020 comports with the legislature's stated

purpose when it enacted RCW 36.58.040, which is to provide every county the authority to designate disposal facilities for solid waste that is generated within its unincorporated areas.

In sum, RCW 70A.205.195 does not create the affirmative right that SkyCorp asserts and is capable of being harmonized with KCC 10.30.020. SkyCorp has therefore failed to meet its heavy burden of demonstrating that KCC 10.30.020 unconstitutionally conflicts with state law.

4.       Reasonable exercise of police power

SkyCorp argues that KCC 10.30.020 does not promote the health, safety, peace, education, or welfare of King County residents when it is applied to prohibit SkyCorp's disposal of mixed and nonrecyclable construction and demolition waste in Yakima County. SkyCorp concedes that King County has a reasonable basis for regulating solid waste disposal within its borders, but it argues that regulating waste disposal once the waste has travelled outside of King County has no reasonable basis in promoting the health, safety, peace, education, or welfare of King County or its residents.[3] To the extent that the County argues that designating sites for the disposal of solid waste ensures that the flow of waste complies with strict environmental standards, SkyCorp responds that the County is exerting "jurisdiction over the entire state" by imposing its own environmental standards statewide. Appellant's Opening Br. at 33. We disagree.

---

[3] SkyCorp also cites *Daniels Sharpsmart, Inc. v. Smith* in support of its claim that King County cannot regulate waste generated within the county that is disposed of elsewhere. 889 F.3d 608, 616 (9th Cir. 2018). While it is true that the Ninth Circuit held that California's regulation of medical waste disposed outside of California is likely a "per se violation of the Commerce Clause," *id.,* a commerce clause challenge is not before this court because the facts before us do not involve any interstate or out-of-state activity. Furthermore, the Ninth Circuit already heard and dismissed SkyCorp's commerce clause claim for lack of standing. *SkyCorp Ltd. v. King County,* 859 F. App'x. 780 (9th Cir. 2021). While SkyCorp attempts to analogize *Daniels* to the case at bar, the legal theory on which the Ninth Circuit relied in reaching its decision is fundamentally different and thus the case is not persuasive.

We use a two-part test for determining whether legislation is reasonable for the purposes of article XI, section 11: (1) The legislation "must promote the health, safety, peace, education, or welfare" of the people; and (2) the legislation must bear some reasonable relationship to accomplishing this purpose. *Weden*, 135 Wn.2d at 700. With regard to the first prong, "'[t]he wisdom, necessity and expediency of the law are not for judicial determination,' and an enactment may not be struck down as beyond the police power unless it 'is shown to be clearly unreasonable, arbitrary or capricious.'" *Id.* (quoting *Homes Unlimited, Inc. v City of Seattle*, 90 Wn.2d 154, 159, 579 P.2d 1331 (1978), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019)). With regard to the second prong, a law must be reasonably necessary to achieve the goal of protecting the public health, safety, morals, or general welfare. *Id.* at 701. In deciding whether a code meets the requirements of the second prong, the courts should generally defer to legislative judgment. *See Homes Unlimited, Inc.,* 90 Wn.2d at 160

The Washington Supreme Court has recognized that "[t]he handling and disposal of solid waste is a governmental function." *Weyerhaeuser v. Pierce County.*, 124 Wn.2d 26, 40, 873 P.2d 498 (1994). Title 10 of the King County Code in its entirety is "necessary for the preservation and protection of public health, welfare, and safety." KCC 10.04.010. Specifically, the purpose of KCC 10.30 is to ensure:

> [T]hat there will be [construction and demolition waste] disposal facilities to serve King County, that in accordance with the comprehensive solid waste management plan, [construction and demolition waste] is recycled to the maximum extent feasible, that the Cedar Hills regional landfill may continue to be dedicated to receiving municipal solid waste (MSW), and that [construction and demolition waste] disposal is subject to King County's strict environmental controls.

KCC 10.30.010.

The same aspects of KCC 10.30.020 that make it local, also support a conclusion that the code is a reasonable exercise of the County's police power. Requiring and enforcing designated

disposal at facilities in King County or in adjacent counties, allows King County to (1) promote the welfare of its residents by preserving revenue generated from specialized disposal sites and jobs at those sites while increasing the quantity of material recycled, reducing long term costs by preserving landfill capacity and decreasing the flow of new materials into King County; (2) promote the health and safety of its residents by preventing diminished air quality and increased carbon emissions that would result from hauling construction and demolition waste to distant counties; and (3) protect the county and its residents by ensuring that waste generated within the county is disposed of in compliance with strict environmental standards. The County has sufficiently identified reasonable public health, safety, and welfare impacts that would result from not being able to properly regulate the flow of mixed and nonrecyclable construction and demolition waste from start to finish. Designating specialized disposal sites bears a reasonable relation to the public health, safety, and welfare of King County residents.

In light of the deference we afford local governments when evaluating the wisdom, necessity, and expediency of local regulations, KCC 10.30.020 is a reasonable exercise of its police power to promote the health, safety, and welfare of its residents. SkyCorp fails to demonstrate that this code is unreasonable, arbitrary, or capricious.

Having failed to meet their heavy burden under any of the three prongs, SkyCorp fails to sufficiently overcome the presumption of constitutionality to demonstrate that KCC 10.30.020 or the County's enforcement action violates article XI, section 11. For the foregoing reasons, we affirm the trial court's grant of summary judgment as to the article XI, section 11 claim.

III. CHALLENGE TO KCC 10.30.020 UNDER ARTICLE I, SECTION 12 PRIVILEGES & IMMUNITIES

SkyCorp argues that by approving some disposal sites and not others, the County has engaged in favoritism that "is improper because King County forces SkyCorp to pay King County's favored facilities for all [construction and demolition] waste originating in King County." Appellant's Opening Br. at 39. According to SkyCorp, this is a violation of the privileges and immunities clause because the County grants a privilege to certain favored facilities to SkyCorp's financial detriment. We disagree.

The privileges and immunities clause of the Washington Constitution, article I section 12, provides that "[n]o law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations." We apply a two-step inquiry to determine whether a regulation violates this clause: (1) "whether the law in question involves a privilege or immunity" and, if so, (2) whether the legislative body "had a 'reasonable ground' for granting the privilege or immunity." *Ockletree v. Franciscan Health Sys.*, 179 Wn.2d 769, 776, 317 P.3d 1009 (2014).

A "privilege" or "immunity" is implicated when a fundamental right of state citizenship is involved. *Id*. at 778-79 We need only examine whether a reasonable ground exists for granting a privilege or immunity if we find that a fundamental right is implicated. *Martinez-Cuevas v. DeRuyter Bros. Dairy,* 196 Wn.2d 506, 519, 475 P.3d 164 (2020).

The Washington Supreme Court has recognized only a limited number of rights of state citizenship under the privileges and immunities clause. *Id.* at 522. Not every statutory grant or benefit constitutes a constitutionally protected privilege or immunity. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 812, 83 P.3d 419 (2004). Generally, rights left to the discretion of the legislature are not fundamental rights of state citizenship for privileges and

immunities clause purposes. *Martinez-Cuevas*, 196 Wn.2d at 518-19; *Grant County*, 150 Wn.2d at 813 (holding that because "the *legislature* enjoys plenary power to adjust the boundaries of municipal corporations," landowners did not have fundamental rights to seek or prevent annexation).

In *Ventenbergs v. City of Seattle*, a waste hauler sued the City for violating the privileges and immunities clause by granting exclusive contracts to some waste haulers. 163 Wn.2d 92, 100, 178 P.3d 960 (2008). The petitioners argued that the right to hold specific private employment was a fundamental right of citizenship, *id.* at 103, and that the City was infringing upon the right to freely alienate property. *Id.* at 105. The court disagreed, reasoning in part that the petitioners could not identify a case establishing a right to freely dispose of solid waste and "[t]o the contrary, '[t]he gathering of garbage and trash is considered to be a matter which public agencies are authorized to pursue by the best means in their possession to protect the public health.'" *Id.* at 105-06 (second alteration in original) (internal quotation mark omitted) (quoting *Shaw Disposal, Inc. v City of Auburn*, 15 Wn. App. 65, 68, 546 P.2d 1236 (1976)). Therefore, because the power to regulate solid waste collection lies entirely with the legislature and local governments, there is no fundamental right to provide this governmental service. *Id.* at 103-04.

SkyCorp attempts to distinguish *Ventenbergs* by arguing that it is not asserting a right to provide solid waste hauling services, but SkyCorp is instead asserting a right to dispose of property that it purchases prior to demolition and then turns into waste. This is a distinction without a difference. Even assuming SkyCorp has a property interest in the waste it hauls to disposal facilities, the regulation of solid waste disposal is nevertheless a power that lies within the discretion of the legislature and local governments. "[I]t is the responsibility of county and city governments to assume primary responsibility for solid waste management and to develop and

implement aggressive and effective waste reduction and source separation strategies." RCW 70A.205.005(6)(c). "The legislative authority of a county may by ordinance provide for the establishment of a system or systems of solid waste handling for all unincorporated areas of the county or for portions thereof." RCW 36.58.040(1)

Property owners do have a right to own, sell, and dispose of property as SkyCorp asserts, but they do not have a right to freely dispose of solid waste without restriction. *See Ventenbergs*, 163 Wn.2d at 101-06. To protect the public health, safety, and welfare of county residents, the County has express authority to decide where solid waste generated within its borders is disposed. *See, e.g.*, RCW 36.58.040. The right to dispose of solid waste is not a fundamental right and thus the code does not implicate the privileges and immunities clause.

## IV. CHALLENGED DECLARATION

During the hearing on the County's motion for summary judgment, counsel for SkyCorp moved to strike the declaration of the County's construction and demolition manager. The court declined to strike the declaration from the record, instead promising to "take [the oral motion to strike] into consideration in terms of weight given." VRP at 14.

SkyCorp has not demonstrated that the trial court abused its discretion by evaluating the weight to be given the declaration in light of SkyCorp's arguments. *See Engstrom v. Goodman*, 166 Wn. App. 905, 909, 271 P.3d 959 (2012). Moreover, any error was harmless because as discussed above, the County's enactment of KCC 10.30.020 was local in nature, reasonable in application, and otherwise consistent with the Washington Constitution, regardless of the content of the challenged declaration, which specifically discussed the County's risk of liability under federal environmental law. We reach our conclusion regarding the constitutionality of KCC 10.30.020 without any reliance on the contested declaration.

CONCLUSION

We affirm the trial court's grant of summary judgment to the County and the dismissal of SkyCorp's claims.

Glasgow, C.J.

I concur:

Che, J.

VELJACIC, J. (dissent) — I write separately from the majority because King County's extraterritorial enforcement of its ordinances in Yakima County violates article XI, section 11 of the Washington Constitution.

SkyCorp Ldt. is a Washington-based business that contracts to remove or demolish buildings in King County and elsewhere. SkyCorp removed mixed and nonrecyclable construction and demolition (C&D) waste, pursuant to a contract with the Renton School District, from a site within the borders of King County. SkyCorp then delivered this waste to a disposal facility in Yakima County. This facility is lawfully permitted to receive such waste, but is not approved by King County under King County Code (KCC) 10.08.020. SkyCorp delivered the waste to this facility because it was more cost effective to transport the waste and deposit it there than to pay to dispose of the waste at a King County approved facility.

On July 24, 2020, SkyCorp received a citation and a $100 fine from the King County Division of Solid Waste for violation of KCC 10.08.020 and 10.30.020. SkyCorp appealed the citation to the King County Hearing Examiner, who affirmed the citation. Additional facts and procedural history are set out in the majority opinion and will not be repeated here.

Among other things, SkyCorp argues that King County's application of KCC 10.30.020 to prohibit disposal of waste at facilities, which are in full compliance with local and state governing authorities but not in King County, violates article XI, section 11 of the Washington Constitution. I agree with SkyCorp on this point.

Article XI, section 11 of the Washington Constitution reads: "Any county, city, town or township, may make and *enforce within its limits* all such local police, sanitary, and other regulations as are not in conflict with general laws." (Emphasis added.) This constitutional provision is a direct delegation of police power to cities and counties. *Petstel, Inc. v. King County*,

77 Wn.2d 144, 159, 459 P.2d 937 (1969). Our Supreme Court has described the "scope of the police power [as] broad, encompassing all those measures which bear a reasonable and substantial relation to promotion of the general welfare of the people." *Covell v. City of Seattle*, 127 Wn.2d 874, 878, 905 P.2d 324 (1995) (internal quotation marks omitted), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019); *see also Lawton v. Steele*, 152 U.S. 133, 136, 14 S. Ct. 499, 38 L. Ed. 385 (1894) (describing the police power as "universally conceded to include everything essential to the public safety, health, morals, and . . . of whatever may be regarded as a public nuisance," allowing the State to "interfere wherever the public interests demand it").

An ordinance complies with article XI, section 11, so long as: (1) the subject matter of the ordinance is local; (2) the ordinance does not conflict with general laws; and (3) the ordinance is a reasonable exercise of the County's police power. *Weden v. San Juan County*, 135 Wn.2d 678, 692-93, 958 P.2d 273 (1998), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682. An ordinance violates article XI, section 11 of the Washington Constitution if it fails any of the above criterion. *Id.* at 692. Whether an ordinance is local, conflicts with general law, or is reasonable is purely a question of law subject to de novo review. *Id.* at 693. KCC 10.30.020 fails the first requirement.

To comply with article XI, section 11, the subject matter of an ordinance must be local. SkyCorp argues that once debris leaves King County, it is no longer a local matter. King County argues that the regulation is local because it only governs waste that is generated within the County's jurisdiction. I agree with SkyCorp.

KCC 10.30.020 regulates out of county disposal. That ordinance renders it "unlawful for any person to deliver any county solid waste to a place other than a disposal facility designated by the county to receive the particular waste." KCC 10.08.020(C).

Washington law authorizes counties to designate disposal sites for solid waste generated within the county's jurisdiction. *See* RCW 36.58.040(1) ("The legislative authority of a county may by ordinance provide for the establishment of a system or systems of solid waste handling for all unincorporated areas of the county or for portions thereof. A county may designate a disposal site or sites for all solid waste collected in the unincorporated areas pursuant to the provisions of a comprehensive solid waste plan adopted pursuant to chapter 70A.205 RCW."). However, there are limits to this delegation of legislative authority—nothing in the statute gives the county the authority to make these disposal sites exclusive among the several disposal sites in the state. *See generally* RCW 36.58.040.[4]

*Brown v. City of Cle Elum*, 145 Wash. 588, 261 P. 112 (1927), is instructive. In that case, the city enacted an ordinance that punished certain acts committed six miles outside of the city limits in Cle Elum Lake, the source of the City's drinking water. *Id*. at 589. Our Supreme Court held that this was a violation of article XI, section 11, because the delegation of police power by the state to municipalities is "strictly limited to the exercise of that power *within the limits* of such municipalities." *Id*. The court noted that municipalities only have such legislative powers that are delegated to them, and the legislature is not empowered to exceed the limitation of those powers.

---

[4] I also note that while the underlying purpose of the county ordinance appears to be a lawful purpose, and the legislature appears to have authorized flow control generally, I do not conclude it is appropriate to elevate a lawful purpose or even a legislative delegation of authority above an express constitutional limitation like we have here.

*Id*. at 590. The court set aside the ordinance, holding that "ordinances such as the one under consideration here cannot be given extraterritorial effect." *Id*. at 591.

More recently, in *Weden*, our Supreme Court found that municipal legislation is still "local" and does not violate article XI, section 11, if its effects outside the county are only "incidental." 135 Wn.2d at 705. In that case, motorized personal watercraft (PWC) users challenged a county ordinance banning personal watercraft use on all marine waters in San Juan County. *Id*. at 688. The challengers argued that the ordinance violated the "local" requirement of article XI, section 11, because it affected those living outside the county. *Id*. at 706. The Court held that the prohibition within the boundaries of the county was purely local, despite the tangential effects on individuals outside of the county when those individuals sought to operate their PWC within San Juan County. *Id*. The court reasoned that while the ordinance had some tangential effects on interests or individuals lying geographically outside of San Juan County, those tangential effects did not render the ordinance not-local. The court further stated, "The bottom line is this PWC Ordinance *only affects the type of activity allowed within the county*. The Ordinance does not preclude San Juan County residents from using PWC outside the County, nor does it regulate activities beyond geographical limits." *Id*. (emphasis added).

Based on the foregoing, it is clear that a county exceeds its authority when it attempts to regulate activity that occurs outside its boundaries, but mere incidental effects outside its boundaries are not enough to violate article XI, section 11. In *Weden*, the prohibition was completely within the jurisdictional borders of San Juan County. *See* 135 Wn.2d at 688. In *Brown*, the ordinance regulated conduct completely outside of the municipality's jurisdiction. *See* 145 Wash. at 589.

Here, like in *Brown*, the penalized conduct occurs outside the jurisdictional boundaries of King County: disposal in Yakima County. And unlike *Weden*, the effects are not merely incidental, they include a targeted citation and monetary fine for disposal outside the geographic boundaries of King County. King County's application of KCC 10.30.020 to sanction otherwise lawful disposal of C&D materials in Yakima County fails the first of the three *Weden* factors.

Accordingly, King County's application of KCC 10.30.020 in this manner violates article XI, section 11, and is unconstitutional. I would reverse summary judgment and remand to the trial court for entry of a summary judgment order in favor of SkyCorp.

_____
Veljacic, J.